## BECKER *v.* JANINSKI.

*(Common Pleas of New York City and County, Trial Term.*   April, 1891.)

1. MALPRACTICE—DEGREE OF CARE AND SKILL.
   A physician, in tne treatment of a patient, is bound only to use that reasonable degree of skill and care which is ordinarily possessed and exercised by the profession.

2. SAME—DISCONTINUING ATTENDANCE.
   When a physician engages to attend a patient without limitation of time, he can cease his visits only with the consent of the patient, or on giving the patient timely notice, or when the patient no longer requires medical treatment.

3. SAME—CHARITY PATIENT.
   A physician may decline to respond to the call of a patient unable to compensate him, but if he undertakes the treatment of such a patient, his duties and liabilities are the same as in the case of any other patient.

4. SAME—NEGLIGENCE OF PATIENT.
   A patient whose own neglect or carelessness concurs with the maltreatment of the physician in causing injury to her cannot recover damages.

5. SAME—MEASURE OF DAMAGES.
   In an action for malpractice, damages may be given for past, present, and prospective injuries, for expenses incurred, for suffering that the patient has undergone or will undergo, and for any inability to labor on her own account.

6. SAME—NOMINAL DAMAGES.
   Where it is impossible to distinguish between the consequences of the trouble for which a physician was called and the consequences of the maltreatment, only nominal damages can be given.

7. SAME—LOSS OF EARNINGS—MARRIED WOMEN.
   A married woman who is not carrying on business or performing labor on her sole and separate account cannot, in an action against a physician for malpractice, recover for loss of services and earnings.

Action by Rosa Becker against Janinski, a physician, for malpractice, $50,000 being claimed as damages.

*M. Bayersdorfer*, for plaintiff.   *Woodward & Buckley*, for defendant.

PRYOR, J., (*charging jury.*)   The plaintiff, formerly a patient of the defendant physician, sues him for malpractice; that is, to recover damages for alleged negligence and unskillfulness in his treatment of her.   The employment of defendant by the plaintiff is not disputed, and the issues which you are to determine are whether the defendant treated the plaintiff unskillfully or negligently; and, if he did so treat her, to what amount of damages she is entitled as compensation for any injuries she has sustained from such unskillful or negligent treatment.   In order to entitle plaintiff to a verdict in her favor, she must prove her cause of action to your satisfaction; in other words, you must be convinced by the evidence in the case that the defendant did treat the plaintiff unskillfully or negligently, to her injury.   The law presumes of the defendant, as of every other person, that he faithfully and fully discharged his duty; and, before you can find a verdict against him, this presumption must be overcome by satisfactory proof that he failed to perform his duty in the particulars imputed to him by the complaint.   Before you can find that the defendant failed to discharge his duty to the plaintiff, you must know, of course, what that duty was; and what that duty was, it is for the court to instruct you.   The law has fixed and prescribed the duty of a physician to his patient; and, the standard of a physician's duty to his patient being a rule of law, you must, in determining your verdict, accept and act upon the definition of that duty, as propounded to you by the court.

In the first place, then, gentlemen, a physician does not contract to cure a patient,—he is not an insurer,—but his undertaking is only, and the duty which the law imposes upon him is only, to exercise due skill and due care in the treatment of his patient.   But, as he cannot exercise due skill unless he possess it, the law requires that a physician shall have and shall exert due skill in the treatment of his patient.   So that·as, on the one hand, he cannot

exercise the skill which he does not possess, on the other, no matter how consummate his skill, if in the particular case he fail to apply the degree of skill which the law exacts of him. But the law requires of a physician, not only due skill, but due care also in the treatment of his patient; and he is as responsible for the want of due care as of due skill. What, then, are that due skill and that due care which the law requires of a physician in the treatment of a patient? As a physician is not bound in law to cure his patient, so neither is he required to treat him with the greatest skill or the greatest care. On the other hand, a physician does not discharge his legal duty to a patient by treating him merely with little skill or with slight care. Between these extremes lies the duty which the law requires of a physician in the treatment of a patient; and it is this: The law exacts of a physician, in the treatment of a patient, that reasonable degree of skill, and that reasonable degree of care, which are ordinarily possessed and exercised by the profession, and he is liable in damages only for injuries resulting to the patient from the lack of either of these requisites. Your knowledge of the limitations upon the human faculties will enable you readily to understand and accept what I now say to you, namely: That, as the best instructed and the most vigilant intellect is not beyond the possibility of mistake, so a physician is not responsible for an error of judgment in the treatment of a patient, unless it be so gross as to imply a want of that skill or that care which I have just defined to you as constituting the legal duty of a physician. It is enough if a competent physician exercise his best judgment in the case. Applying the legal standard of a physician's obligation to the evidence in the case, it is for you to determine whether the defendant failed in the discharge of his duty to the plaintiff.

The complaint imputes to the defendant a violation of that duty in two particulars, namely, neglect of the plaintiff, and unskillful treatment of her. The defendant was called to treat the plaintiff for a miscarriage. He visited her the day of her misfortune and the two succeeding days, but he never came afterwards. It is not denied that when he ceased his visits she was not cured of her malady. His retainer was for no definite period. Upon this state of facts, the question is, did the defendant violate his duty to the plaintiff by his abandonment of her? When a physician engages, as here, to attend a patient without limitation of time, he cannot cease his visits, except— *First,* with the consent of the patient; or, *secondly,* upon giving the patient timely notice so that he may employ another doctor; or, *thirdly,* when the condition of the patient is such as no longer to require medical treatment; and of that condition the physician must judge at his peril. Here it is not shown that the plaintiff was no longer in need of medical attention; so that the defendant had no right to discontinue his attendance, unless either the plaintiff consented or he gave her proper notice; and, if he left her without such consent or such notice, he was guilty of grave professional negligence. The defendant swears that, at his last visit, he notified the plaintiff that he was going out of town, and indicated to her a physician who would attend her in his stead. If this statement be true, the defendant's absence is excused, and you must exonerate him from this imputation of neglect. But the defendant's story is denied by the plaintiff's witnesses, and their testimony tends to prove that he abandoned her without leave and without notice. It is for you, gentlemen, to say what the fact is; and, according as you find the fact in favor of the plaintiff or of the defendant, your verdict on this question of negligence will be for the plaintiff or for the defendant.

Independently of the defendant's alleged wrongful abandonment of her, the plaintiff charges that during his three days' attendance upon her he treated her unskillfully. It is conceded that, when he ceased his visits to her, she had not been delivered of the "after-birth," and that he was aware of the fact. It is further conceded that he made no attempt, by mechanical means, to re-

lieve her of the "after-birth." You remember the reasons he gave for not making such an attempt. But you will also recollect the testimony of the plaintiff and her witness to the effect that the defendant made no examination of the plaintiff; that he said there was no "after-birth" in the case; and that the plaintiff was "all right." In fact, the plaintiff was subsequently delivered of the "after-birth." It is for you to say which of the contradictory stories is the fact; whether he was ignorant of the existence of the "after-birth;" and whether, in the exercise of the skill with which the law required him to treat the plaintiff, he should have made an effort to relieve her of the "after-birth." In a word, it is for you to say whether the defendant's treatment of the plaintiff was skillful or unskillful, and, according as you find the treatment skillful or unskillful, must your verdict upon this question be for the plaintiff or for the defendant.

It appears that the plaintiff was a charity patient; that the defendant was treating her gratuitously. But I charge you that this fact in no respect qualifies the liability of the defendant. Whether the patient be a pauper or a millionaire, whether he be treated gratuitously or for reward, the physician owes him precisely the same measure of duty, and the same degree of skill and care. He may decline to respond to the call of a patient unable to compensate him; but if he undertake the treatment of such a patient, he cannot defeat a suit for malpractice, nor mitigate a recovery against him, upon the principle that the skill and care required of a physician are proportioned to his expectation of pecuniary recompense. Such a rule would be of the most mischievous consequence; would make the health and life of the indigent the sport of reckless experiment and cruel indifference. Even though, therefore, the defendant was not to be paid for his attendance, he was still bound in law to treat the plaintiff with the requisite skill and the requisite care.

Evidence has been given tending to show that the plaintiff disregarded and disobeyed an injunction imposed upon her by the defendant to "keep quiet in bed;" that, notwithstanding such admonition, she got out of her bed, went into another room, and subjected herself to some exertion. Gentlemen, in a case such as this, all the obligation is not upon the physician; but the patient also has duties to discharge. In particular, the patient must obey the orders and follow the directions of the physician; and, if he disobey such orders or neglect such directions, he cannot hold the physician responsible for the consequences of such disobedience or neglect. Accordingly, I charge you that, if you find that the injury of which the plaintiff complains was the effect of her own carelessness or neglect alone, or was the effect of the defendant's negligence or want of skill in combination and co-operation with her own carelessness or neglect, she cannot recover. Her contributory negligence would defeat the action. If, then, you find that the defendant did not treat the plaintiff with the requisite skill or the requisite care, and that no neglect or carelessness on the part of the plaintiff contributed to cause the injury of which she complains, your verdict must be for the plaintiff. But, on the other hand, if you find that the defendant did treat the plaintiff both with the requisite skill and the requisite care, or that the plaintiff's own neglect or carelessness concurred in causing her injury, your verdict must be for the defendant. At this point I must direct your attention to a phase of the case not yet adverted to. The plaintiff suffered a miscarriage; but it is not pretended that the defendant is in any way responsible for that miscarriage. Now, it is for you to determine whether the injuries of which the plaintiff complains were due to the miscarriage or to maltreatment by the defendant. If you find that the sole cause of the plaintiff's injuries was the miscarriage, your verdict must be for the defendant.

If your verdict be for the plaintiff, you must award her such an amount of damages—not exceeding $50,000—as you believe will be a fair and just compensation for all the injuries, past, present, and prospective, which you find

to be the consequences of the defendant's maltreatment of her. Whatever expense she has incurred; whatever suffering she has undergone or will undergo; whatever inability to labor on her own account has been inflicted upon her,—all those things, in so far as they are the consequences of the defendant's maltreatment of the plaintiff, you may consider and include in your estimate of the compensation to be allowed her.

But here I must caution you against three possible errors in the computation of the damages, should you render a verdict for the plaintiff. The *first* is, the including in the damages the injuries and suffering which the plaintiff sustains solely and exclusively from the miscarriage. The defendant not being responsible for the miscarriage, he is not to be made liable for any of its consequences. If liable at all, he is liable only for the effects of his maltreatment of the plaintiff. So that, should you find it impossible to distinguish between the consequences of the miscarriage and the consequences of the maltreatment; should you be unable to find, upon the evidence, that the plaintiff has suffered any injury distinctively due to maltreatment, you will award only nominal damages against the defendant. In the *second* place, it may be that, although the plaintiff's injury was due solely and exclusively to the defendant's maltreatment, yet the consequences of that maltreatment may have been aggravated by the neglect or carelessness of the plaintiff. If you find this to be the fact,—if you find that her own neglect or carelessness protracted her recovery, or increased her suffering, or impaired her strength or health, or prevented her complete cure,—for none of these consequences is the defendant liable, and for none of them is he bound to compensate the plaintiff. *Thirdly*, plaintiff has given evidence tending to show a temporary inability to labor, and a permanent impairment of her capacity to labor. She is a married woman; and it does not appear that she was engaged, at the time of her treatment by the defendant, in any trade or business, or performing labor or services, on her sole and separate account. She took boarders; but whether for herself alone, or for her husband, is not clearly apparent on the evidence. Now, notwithstanding the supposed complete emancipation of married women in this state, and their exaltation to an equality with, if not to a superiority over, their husbands, it is still the law in New York that, unless a married woman be carrying on business or performing labor on her sole and separate account, her services and earnings belong to her husband; and he, not she, is entitled to recover for their loss. Hence, unless you find that the plaintiff was keeping boarders on her own sole and separate account, you cannot award her anything for the loss of services and earnings. Gentlemen, the case you have to determine is not only of consequence to the parties, but, as involving the duties and liabilities of physicians, is of interest to that noble and beneficent profession; and, as affecting the safeguards of human health and life, is of moment to the entire community. It is because of the importance of the case in these various aspects, and of the many delicate and difficult questions it involves, that I have detained you so long in expounding to you the principles of law governing your determination. It is because of the great importance of the case that I am pleased to commit it to a jury so capable of deciding it intelligently and justly.

Verdict for plaintiff for $60 and costs.