## LATHROPE et al. v. FLOOD.*

### S. F. No. 1703; February 20, 1901.

#### 63 Pac. 1007.

Physicians—Abandonment of Case—Damages.—Defendant was employed to attend plaintiff during her first confinement. He assumed charge of the case, visiting plaintiff at intervals, until he deemed it the proper time to employ instruments to aid in the delivery of the child, whereon the plaintiff shrank back and screamed, compelling the defendant to let go the instruments. Defendant threatened the plaintiff that if she did not quit screaming he would quit the case, and on the failure of a second or third attempt to use the instruments he abruptly left the house. This was at midnight, and it was an hour or more before another physician could be obtained, who, on examination, found that plaintiff's condition was not such as to require the use of instruments just then. Held, that a verdict of $2,000 was not excessive for the unwarranted abandonment of the case and the mental suffering occasioned plaintiff thereby.[1]

APPEAL from Superior Court, City and County of San Francisco; William R. Daingerfield, Judge.

Action by Margaret A. Lathrope and another against P. H. Flood. From a judgment in favor of the plaintiffs the defendant appeals. Affirmed.

Garret W. McEnerney for appellant; Wm. S. Barnes and Edgar D. Peixotto for respondents.

HENSHAW, J.—This is an action against a physician to recover damages for the alleged injuries occasioned by his negligent and unskillful treatment of his patient, and for injuries resulting from the violation of his contract of em-

---

*For subsequent opinion in bank, see 135 Cal. 458, 57 L. R. A. 215, 67 Pac. 683.

[1] Cited in note in Ann. Cas. 1912C, 832, on liability of physician for lack of diligence in attending patient.

Cited in Manser v. Collins, 69 Kan. 297, 76 Pac. 853, where the court says: "Mental suffering, however, resulting from the injury which arises in his mind, but is not a part of the pain naturally attendant on and connected with the injury, cannot be regarded as an element of damage."

ployment in abandoning her case, and leaving her, in a critical period, without proper or any medical attendance. The case was tried by a jury, which rendered a verdict for plaintiff in the sum of $2,000. This appeal is taken from the judgment and from the order denying the defendant a new trial.

The defendant, P. H. Flood, a practicing physician in San Francisco, was employed by the plaintiffs to attend Margaret Lathrope in her prospective confinement. She was a young married woman, and pregnant with her first child. At the beginning of her labor, Dr. Flood was sent for and attended. He concluded that the case would be a prolonged one, and went away, visiting the house at intervals. He returned on the evening of the twenty-seventh day of April, and after examination of his patient decided that it would be necessary to employ instruments to aid in the delivery of the child, and that the time for the use of such instruments had arrived. He therefore ordered the attendant nurse to place the patient in proper position, and inserted the instruments, whereupon the sick woman, in fear, or pain, or both, shrank back, compelling the doctor to let go of the instruments or greatly imperil the lives of both mother and child. He made a second effort with like result, and perhaps a third, though this is in controversy. He testifies that he warned the woman to be quiet, and explained to her the danger, both to herself and unborn infant, occasioned by her conduct, and finally told her that, if she "did not quit, he would quit." Upon the part of the plaintiff the evidence is that the woman was suffering excruciating pain, which was increased by the insertion of the instruments; that she screamed, whereupon the doctor said: "You quit your screaming. If you don't quit, I'll quit." Upon the failure of a second or a third effort to employ instruments, the defendant abruptly left the house, without a word of explanation or suggestion to anyone. This was about midnight. The husband followed him into the street, imploring him to return, and not to leave his wife in that condition. The defendant refused. "The doctor's reply was, in substance, that the woman screamed, and he was not used to working for women that screamed. The doctor also said that there were plenty of doctors around, and that I could go to the German Hospital. I said 'I know you cannot get doctors from the German Hospital at this time of

night.' " Mr. Lathrope asked him to recommend somebody, and the doctor replied: "You can get anyone you like. Get whoever the devil you please. I am not going back." Then he walked away. After an interval of an hour or more, during which time the patient was left with knowledge that the physician had abandoned her, and without any medical attendance, the presence of another physician was secured. He found her not so far advanced in parturition as to require the use of instruments until some six or eight hours afterward, when, by their aid, he delivered her of an infant, which lived about eight minutes. It does not appear that defendant's treatment of the case up to the time of his abandonment of it was either negligent or unskillful. It does not appear that undue physical injuries were inflicted by his treatment, either upon the mother or the child. If either suffered in this respect, it is demonstrated that the actuating cause was the conduct of the patient in moving and shrinking while the instruments were actually inserted. Upon this it is contended by appellant that the verdict is grossly excessive, and that it would be difficult to sustain a verdict even for nominal damages. But other considerations enter into the determination of the question. It is the undoubted law that a physician may elect whether or not he will give his services to a case, but, having accepted his employment, and entered upon the discharge of his duties, he is bound to devote to the patient his best skill and attention, and to abandon the case only under one of two conditions: First, where the contract is terminated by the employer, which termination may be made immediate; second, where it is terminated by the physician, which can only be done after due notice, and an ample opportunity afforded to secure the presence of other medical attendance. Much expert testimony was given by physicians in this case to the effect that the relation of confidence between physician and patient is all-important, and that a physician is justified in abandoning a case where that relationship does not exist. This is quite true, but the circumstances of abandonment are equally important. He can never be justified in abandoning it as did this defendant, and the facts show a negligence in its character amounting well-nigh to brutality. A young woman is in the throes of labor with her first child. She is suffering apparently not only the natural travail, but something more. Her condition is such that the

physician has decided that the time to employ instruments to aid her delivery is at hand. He does employ them; and because the woman, in her fear and anguish, is refractory, he, as he himself testified, "became disgusted"; "he was not a child, to be trifled with"; and so leaves the house in the dead hour of the night, without time or opportunity afforded for the family to procure the attendance of another doctor. Such conduct evidenced a wanton disregard, not only of professional ethics, but of the terms of his actual contract. It was a violation of that contract, and for all damages that resulted the defendant is justly responsible: Barbour v. Martin, 62 Me. 536; Ritchey v. West, 23 Ill. 385; Lawson v. Conaway, 37 W. Va. 159, 38 Am. St. Rep. 17, 18 L. R. A. 627, 16 S. E. 564. The plaintiff testifies that her physical sufferings greatly increased after the doctor's departure, and while she was thus left unattended. What her mental sufferings, perturbation, and fear were, the evidence abundantly shows; and, indeed, it was most natural, under the existing circumstances, believing she was going to die, passing through woman's martyrdom thus unaided, that her mental anguish should have been most acute. The law has no scales by which to measure with exactness such mental suffering and the reflex effect of such mental suffering upon the physical condition. The jury, for the injuries suffered by plaintiff, were instructed that in fixing compensatory damages they were to take into consideration the physical injury and suffering and the mental suffering and humiliation, if any, caused by the defendant's negligent act or breach of contract. We can perceive nothing excessive in the verdict which they rendered, and nothing to indicate that they must have been influenced by passion or prejudice. The judgment and order appealed from are therefore affirmed.

We concur: McFarland, J.; Temple, J.