## MARTHA MILWEE ET AL. v. W. A. PHELPS.

### Decided January 8, 1909.

**1.—Recorded Deed—Evidence—Ancient Instrument.**

A conveyance attested and proved for record by but one subscribing witness was admissible without proof of its execution (Act of April 23, 1907, Laws, 30th Leg., p. 308, amending Rev. Stats., art. 2312) when it had been actually recorded for a period of ten years; and also, it seems, as an ancient instrument where more than thirty years old and the original, produced from the proper custody, is offered.

**2.—Bond for Title—Presumption of Payment.**

A bond to make title on payment of the consideration named was admissible as evidence of title, though payment was not shown, where it was followed by possession and claim of title by the grantee for more than thirty years; payment in such case will be presumed.

**3.—Cotenant—Claim of Hostile Title—Conveyances.**

In support of a claim of hostile holding of the entire land under a bond for title from the owner of one undivided half interest to his cotenant, recorded conveyances by the latter of the entire interest in the whole or in specific parts of the land were admissible in evidence under his allegation of a lost deed perfecting his title, and also in support of adverse holding for a long term of years creating a presumption of payment of the consideration named in the bond.

**4.—Same—Cases Discussed.**

Frugia v. Trueheart, 48 Texas Civ. App., 513, followed. Runge v. Gilbough, 87 S. W., 833; Gilbough v. Runge, 99 Texas, 539, distinguished.

**5.—Evidence—Declarations.**

On the question as to whether certain notes had been paid, declarations by the former holder, since deceased, that he still held them, and as to where he intended to leave them on starting to the army, and of his intentions with respect to them, were hearsay and inadmissible, and the exclusion of testimony

as to his seeming to be worried at his inability to find them, if error, was harmless.

**6.—Assignments of Error—Findings of Court—Facts Merely Evidential.**

Error cannot be assigned on findings of fact by the trial court which are merely evidential of the facts in issue and determined by him, and which do not necessarily affect such determination.

**7.—Presumption of Payment.**

Evidence of long possession and use of land by the vendee under bond for title, and absence of adverse claim or attempt to enforce the notes for purchase money, considered and held to support a presumption of their payment.

**8.—Action for Land—Outstanding Title.**

In an action for recovery of land in which the proof established title adverse to plaintiff in one under whom defendants claimed, errors in the admission of evidence to show their acquisition of the rights of such holder of the outstanding title are immaterial.

**9.—Administrator's Sale—Application, Order and Report.**

The interest of an estate in a tract of land having been inventoried as one-third of a league, which was the entire survey, an application for sale of all the property of the estate, but describing this tract as being 640 acres, was granted, and the sale thereof, reported as being of one-third of a league, was confirmed. Held, that the order might, and on collateral attack should be construed as directing the sale and supporting a conveyance of the entire one-third of a league, and not of an undivided 640 acres thereof only.

**10.—Same.**

It seems, also, that, under an order to sell 640 acres of a survey of one-third of a league, sale of the entire survey would not be void as to the 640 acres authorized to be sold; and the purchaser, as tenant in common, could defend possession of the whole against one showing no right to recover against himself or his cotenant; also, even though the sale was void as to the 640 acres, if the purchase price was paid and used in settling debts of the estate, the purchaser in possession became subrogated to the rights of the creditors, and entitled to hold the land as against one showing no title superior to that of the estate.

Appeal from the District Court of Red River County. Tried below before Hon. Ben H. Denton.

*Kennedy & Robbins,* for appellants.—An instrument signed by only one subscribing witness, who proves it for record, is not admissible to record, and no length of time will make admissible in evidence, as an ancient instrument, the record or copy thereof of such instrument improperly acknowledged or proven for record. Rev. Stats., arts. 630, 4622, 4627; Smith v. Kenney, 54 S. W., 801; Heintz v. Thayer, 92 Texas, 658-666; Johnson v. Taylor, 60 Texas, 361; Huff v. Webb, 64 Texas, 284; Hill v. Taylor, 77 Texas, 295.

A vendor of land under an executory contract for its sale remains the owner of the legal title until the purchase money has been paid, and to defend against such legal title it devolves upon the vendee, or those claiming under the vendee, to show by a preponderance of the evidence that such contract has been complied with and the purchase money paid, and without such proof this bond for title was inadmissible. Davis v. Ragland, 93 S. W., 1099; McFaddin v. Williams, 58 Texas, 625; Lewis v. Cole, 60 Texas, 341; Collins v. Ballew, 72 Texas, 330, 334; Short v. Price, 17 Texas, 397.

When payment of vendor's lien is sought to be shown by presumption, based on the deeds of purchasers, before such deeds become admissible in evidence for such purpose it must be shown that such purchasers had repudiated the title remaining in the original vendor or had asserted claims under such deeds adverse to his rights. Gilbough v. Runge, 99 Texas, 539; Runge v. Gilbough, 87 S. W., 833-838; Delancy v. McKeen, 1 Wash., 354.

A sale of property purporting to belong to an estate, by the administrator thereof, even though it be confirmed by the Probate Court, is a nullity, unless an order by such court authorizing the sale had been previously made and entered of record, and such report of sale and order of confirmation thereof are not admissible for any purpose. Rev. Stats., arts. 2, 113; Terrell v. Martin, 64 Texas, 121-128; House v. Blount, 69 Texas, 30; Riley v. Pool, 24 S. W., 85; Ball v. Collins, 5 S. W., 624; Collins v. Ball, 82 Texas, 259-269.

An order to sell a specified quantity of an estate will not support a sale of a larger and different quantity than that authorized. Collins v. Ball, 82 Texas, 265.

When testimony has been introduced as a basis for a presumption of payment of notes, as in this case, any and all acts or declarations illustrative of acts of either of the parties to the original transaction, inconsistent with the theory sought to be established, are admissible as circumstances at least tending to rebut the inference of payment which may be drawn from such testimony. Steves v. Smith, 107 S. W., 144; Greenleaf on Evidence, sec. 108; 16 Cyc., 1209, note 37.

Giving to the evidence offered by the defendant the strongest construction that it will bear, it only tends to raise a presumption of payment of the notes in question, and when such presumption is confronted with facts contradictory thereto and such facts are undisputed, such presumption of payment disappears. American Cent. Ins. Co. v. Heath, 29 Texas Civ. App., 445; Haynes v. State, 85 S. W., 1043-1045; Hays v. U. S., 175 U. S., 262; United States v. Wiggins, 14 Pet. (U. S.), 334; Meyer v. Krohn, 114 Ill., 574; Dugas v. Estiletts, 5 La. Ann., 559; Befay v. Wheeler, 84 Wis., 135; Paxton v. Boyce, 1 Texas, 324; Sharpleigh v. Cooper, 1 Texas Civ. App., 27; Largen v. The State, 76 Texas, 328.

A bond for title, such as the one involved in this case, is nothing but a contract for the sale of land, and when its recitals show that the title to the land therein mentioned and described, passes only on payment of the purchase money notes therein mentioned, the payment of such notes becomes or is a condition precedent which must be complied with. Vardaman v. Lawson, 17 Texas, 15; Russell v. Seisfeld, 62 Texas, 457; Stitzle v. Evans, 74 Texas, 599.

The record was notice to all of the nonpayment of the notes therein described. Willis Bros. v. Gay, Admr., 48 Texas, 463; Robertson v. Guerin, 50 Texas, 323; Crews v. Taylor, 56 Texas, 465-466. And subsequent purchasers are charged with such notice even though the bond for deed be not of record. Gilbough v. Runge, 99 Texas, 539.

*Lennox & Lennox,* for appellee.—There was no error in finding, under the facts and circumstances in evidence, that the interest claimed

by plaintiffs in and to the land in controversy had been conveyed to Snell, the purchase money paid, and such title papers executed as were necessary and proper to vest the legal and equitable title in the vendee. Kirby v. Cartright, 106 S. W., 743; Frugia v. Truheart, 48 Texas Civ. App., 512; Guffey Petroleum Co. v. Hooks, 47 Texas Civ. App., 560; Evans v. Ashe, 108 S. W., 401 and 1191; Taylor v. Watkins, 26 Texas, 693; Glascock v. Hughs, 55 Texas, 476; Herndon v. Burnett, 21 Texas Civ. App., 25; Owen v. New York & T. Land Co., 11 Texas Civ. App., 284; Foot v. Sillman, 77 Texas, 271.

As there was no evidence to indicate that plaintiffs or their ancestor claimed or asserted a right to or interest in the land until just before the filing of this suit, although nearly fifty years had passed away, the court had a right to presume that the notes therein described had been paid and the burden of proof then shifted upon the plaintiffs to show otherwise, and they having failed to rebut such presumption by competent and sufficient evidence, it was not error to find that they had in fact been paid prior to the death of Snell. Evans v. Ashe, 108 S. W., 401; Guffey Petroleum Co. v. Hooks, 47 Texas Civ. App., 560; Owens v. New York & T. Land Co., 11 Texas Civ. App., 284; Foot v. Sillman, 77 Texas, 271.

WILLSON, CHIEF JUSTICE.—The question made by the record on this appeal is one of title to an undivided one-half interest in the D. D. Bruton survey of one-third of a league in Red River County, patented to James F. Snell as assignee, February 24, 1848. By a deed dated July 4, 1859, Snell conveyed the undivided one-half interest in question to W. H. Millwee, who by a deed dated September 9, 1859, obligated himself to reconvey same to Snell on the payment by him of four notes—one for $1250, payable December 25, 1859, and the others for 200,000 feet of lumber each, payable in 1860, 1861 and 1862. Claiming, as appears from the evidence, that the title to the interest covered by the bond remained in Millwee until the notes were paid, and further claiming that said notes were never paid, appellants, the widow, children and grandchildren of Millwee, who died intestate in September, 1876, brought the suit against appellee, who by mesne conveyances claimed title from Snell to the entire tract, to try the title to the one-half undivided interest and for a partition of the tract. Appellants' petition was in the ordinary form in such cases. Disclaiming title or possession as to 100 acres of the land, as to the remainder thereof appellee answered by a general denial and plea of not guilty; and by way of cross-bill for affirmative relief, sought a decree removing a cloud on his title alleged to exist by reason of facts set out in his pleadings. By a supplemental petition appellants alleged certain facts not necessary to be here stated, in avoidance of those relied upon by appellee in his cross-action. The trial was before the court without a jury. The facts necessary to support the judgment, as distinguished from other facts evidencing such necessary facts, found by the court, briefly stated, were: That Milwee executed and delivered the bond obligating himself to convey the land to Snell on payment of the notes; that the notes were paid by Snell during his lifetime; and that appellee by mesne conveyances had acquired Snell's title to the

land. From these findings, the only title asserted by appellants being such as they held as heirs of W. H. Millwee, deceased, the court's conclusion of law that appellee had the better title to the land necessarily followed. Judgment therefore was rendered in appellee's favor; and from the judgment so rendered the appeal is prosecuted.

*After Stating the Case.*—As constituting their title appellants relied upon (1) a patent from the State to Snell as assignee of Bruton, dated February 24, 1858; (2) a deed from Snell to W. H. Millwee conveying an undivided one-half interest in the land, dated July 4, 1859; and (3) proof that Millwee died intestate and that they were his only heirs. As evidence that the title so shown in Millwee had passed to Snell, under whom he claimed, appellee offered Millwee's bond, dated September 9, 1859, obligating himself to convey the undivided interest to Snell on the payment by the latter of the promissory notes mentioned therein. The bond was attested by only one subscribing witness, and had been admitted to record on proof by him of its execution. On the ground that to have been entitled to record its execution must have been attested by at least two subscribing witnesses, and on the further ground that the instrument on its face was a mere contract to convey on conditions not shown to have been complied with, appellants objected to the admission of the bond as evidence. Appellants' suit was commenced May 9, 1907. The bond, it appeared, had been filed for record in Red River County, January 12, 1861, and had been recorded by the county clerk of that county on February 22, 1861. The objection to its admission as evidence on the ground that it had not been so authenticated as to entitle it to record, was, we think, overcome by art. 2312, Sayles' Statutes, as amended by the Act April 23, 1907 (General Laws, p. 308), declaring that every instrument which has been actually recorded for a period of ten years, whether proved or acknowledged as required by the law in force at the time it was recorded or not, "shall be admitted as evidence in any suit in this State without the necessity of proving its execution," even if otherwise, as an ancient instrument, it was not admissible without such proof. The rule is that an instrument thirty years old, coming from the proper custody, free from suspicion, and which has been so acted upon as to furnish some corroborative evidence of its genuineness, is admissible as evidence without proof of its execution. Holmes v. Coryell, 58 Texas, 688; 1 Green. Ev. (16th ed.), sec. 575b. But for the statute referred to, under the rule in Heintz v. Thayer, 92 Texas, 658, the record as an ancient one, or a copy thereof, of the instrument, might not have been admissible. But it seems that it was the original bond, and not the record or a copy thereof, which appellee offered and which the court admitted as evidence.

As to the other objection urged by appellants, it may be said that the evidence showed and the court found it to be a fact that the exclusive actual possession of the land was passed to Snell at the time the bond was executed in 1859; that claiming under the bond Snell continued to hold such possession until his death in 1868; that neither Millwee while he lived nor appellants after his death until their suit

was filed May 9, 1907, ever asserted a claim to the land; and that appellant and other vendees of the land whose title he had acquired, claiming under said bond, after Snell's death and until appellants' suit was filed May 9, 1907, continued to assert title in themselves to the land.   With such evidence in the record, it is clear, we think, that the court did not err in admitting the bond over the objection to it that there was no evidence that its condition with reference to the payment of the notes had been complied with.   "The lapse of twenty years, without explanatory circumstances," said Professor Greenleaf, "affords a presumption of law that the debt is paid."   2 Green. Ev. (16th ed.), sec 528.   We see no reason why the rule should not have been applied in appellee's favor.   It rests upon reasons applying to his case as strongly as they would apply to any case, to wit, "the experience of mankind that vouchers, acquittances and evidences of payment are not usually preserved from one generation to another; that creditors usually desire their own, without waiting a score of years upon their debtors; and that where there has been no recognition of the claim by the debtor, and the creditor has forborne to assert a right for so long a time, it is most probable that his claim has been in some way satisfied."   Courtney v. Staudenmayer, 43 Pac., 760.

As tending to show an open and continuous assertion by himself and those under whom he claimed of title to all the land described in the bond, inconsistent with and adverse to the claim asserted by appellants, during a long period of time, appellee offered as evidence a number of deeds, etc., conveying the land to and from persons claiming the Snell title.   Appellants objected to the admission of these documents as evidence on the ground (1) that it had not been shown that they had notice or knowledge of the transactions evidenced by them, and (2) that it did not appear that such transactions were inconsistent with the claim made by them that the notes had not been paid.   The action of the court in overruling their objection is assigned as error by appellants.   We think the assignment should be overruled. The deeds were dated from 1868 to 1902, and had been spread upon the records of Red River County—most of them within a short time after they were executed.   Some of them purported to convey all the land covered by the title bond, and others segregated parts thereof. In his cross-bill appellee had alleged that the notes mentioned in the title bond had been paid, that Millwee in compliance with his bond had executed and delivered to Snell a deed to the land, and that the deed had been lost.   With reference to the deeds objected to we think it may be said as was said by the court in Frugia v. Trueheart, 48 Texas Civ. App., 513, with reference to like deeds offered for a similar purpose: "As circumstances tending to establish the execution of this deed by showing assertion of title and ownership under it, it was proper to show that the land had been traded in, bought and sold by the person claiming title under the lost deed, and that this involved the entire league.   This evidence was significant also in connection with the nonclaim by Young or his heirs.   The sale of the land in various tracts, execution and recording of deeds, all in hostility to their title, called upon them to assert their claim, and their failure to do so in the

presence of such public assertion of hostile claim of ownership was a cogent circumstance to show that they knew they had no title, and thus explain their failure to assert any." The case of Gilbough v. Runge, 87 S. W., 833, 99 Texas, 539, relied upon by appellants in support of their contention is not, we think, of value in determining the question. Runge, in March, 1889, had sold the land to Gilbough, in the deed expressly reserving the vendor's lien to secure the payment of notes executed by Gilbough for the purchase money, payable in one and two years from the date of the deed. In 1894 Gilbough sold portions of the land to Hampton and Bailey, who were ignorant of the fact that the notes had been executed and were unpaid. When Runge, in 1902, brought suit on the notes and to foreclose his vendor's lien, making Hampton and Hays, to whom Bailey had conveyed, as well as Gilbough, parties, they all pleaded limitation against the notes; and when by an amendment Runge sought to recover the land, Hampton and Hays set up as a defense the five years statute of limitations. The court held that as they had never repudiated the Runge title, their possession was in subordination and not adverse thereto, and that the defense of limitation was not available to them. In that case the facts did not call for an application of the rules controlling where lapse of time and other circumstances are relied upon to establish payment or the execution of a deed.

Appellant Martha Millwee, widow of W. H. Millwee, deceased, testified by deposition as a witness for appellants. After answering that when her husband left home in 1862 to go to the war he showed her an envelope marked "Snell notes," which he then placed in his saddlebags. She further answered, "And he told me he still held about $4000 of Snell's notes due on the land and that he would leave them with S. H. Morgan, of Clarksville, Texas." The part of the witness' answer quoted was by the court excluded, and properly so, we think, as hearsay. The witness further stated that Morgan was elected to the Confederate Congress; died there; that her husband afterwards tried to get the notes, but was informed that they could not be found among Morgan's papers, and that she knew what she stated to be true because her husband had told her so and "seemed to be worried about not being able to find the notes." The answer of the witness as detailed was excluded as hearsay. All that part of the answer except the statement that her husband "seemed to be worried about not being able to find the notes," clearly was hearsay, and properly was excluded as evidence. It does not appear from the bill of exceptions to what time the witness had reference when her husband seemed to be worried about the notes; and for this reason, if the statement was improperly excluded, its exclusion should, we think, be held to be harmless. After testifying that her husband during his lifetime gave orders on Snell for lumber due on the notes, which Snell refused to honor, she further testified that her husband "would have tried to get the land back, but after the timber was cut off the land was not considered worth much in those days." On the ground that her answers to cross-interrogatories showing she was never on the land after the sale thereof to Snell, the portion of the answer quoted was hearsay, same was excluded by the court. In doing so we think the court did

not err. The fourth and fifth assignment of error presenting the objections made to the exclusion of the evidence above referred to, for the reasons stated, are overruled.

By their seventh, eighth, ninth, tenth and eleventh assignments of error, appellants complain that findings of the court (1) that the notes were paid on or about the date of their maturity; (2) that no orders or demands were ever given or made by W. H. Millwee in 1867 and after he returned from the army on Snell for payment of the notes; (3) that if orders for lumber were given by said Millwee on Snell they were given for some other purpose than to collect payments due on the notes; (4) that said Millwee had knowledge of the administration pending on Snell's estate, and that after Millwee's death appellants had notice that appellee and those under whom he claimed were asserting title to the land to be in themselves, and (5) that there was no evidence that appellee and those under whom he claimed never made any inquiry to ascertain whether the notes had been paid or not, are contrary to and unsupported by the evidence. The findings specified were merely of facts evidencing ultimate facts found by the court—that the notes had been paid and a deed conveying the land to Snell executed by Millwee. Should it be conceded that the findings were, as claimed, without evidence to support them, it would not be a reason for reversing the judgment of the court, unless it could be said that there was not in the record other evidence sufficient to support the ultimate essential findings. The notes might not have been paid at or about the date of their maturity, and yet have been paid at some other time. Orders and demands for the payment of the notes might have been given or made by Millwee in 1867, and after he returned from the army, and at the time been ignored by Snell, and yet he might afterwards have paid the notes. Millwee and appellants might never have known of the administration on Snell's estate, and yet the notes might have been paid, and the conveyance, as claimed by appellee, have been executed by Millwee. And appellee and those under whom he claimed might never have made inquiry to ascertain if the notes had been paid, and yet they might have been paid. The twelfth, thirteenth, fourteenth and fifteenth assignments of error question other findings made by the court as supporting the finding that the notes had been paid and a deed executed by Millwee. For the reason suggested, they and said seventh, eighth, ninth, tenth and eleventh assignments are overruled.

By their sixteenth assignment of error appellants question the sufficiency of the evidence to support the finding by the court that the notes had been paid and a deed conveying the land to Snell in compliance with the bond executed. It appears that from the date of the execution of the notes until Snell's death, in 1868, covering a period of about nine years, Snell was in the actual possession of the land, operating a sawmill on same and cutting and manufacturing into lumber the timber thereupon; that after Snell's death and during said year of 1868 administration was opened on his estate, and that same was not closed until 1882; that the land in said year 1868 was inventoried as property belonging to his estate; that as such it was sold by his administrator and the sale thereof confirmed by the Probate

Court in 1877; that thereafterwards and until the trial of the case, in 1907, covering a period of thirty years, the purchaser at the administrator's sale and vendees of the land claiming under such purchaser dealt with the land as their own, paying the taxes assessed against and keeping trespassers off the same, cutting and selling the timber therefrom, and so acting in connection with same as to be recognized as its owners in the neighborhood in which it was situated. It further appeared that for a time before Snell's death until his own death, eight years later, Millwee never asserted any right or title to or claim against the land or any interest therein, and that after his death until a short time before their suit was filed in 1907—a period of over thirty years—appellants, as his heirs or otherwise, never asserted such a right or title or claim. The facts stated prima facie, we think, establish the payment of the notes, and the burden rested on appellants to show to the contrary. The trial court found that they had not discharged that burden and gave effect to the presumption of payment arising from the long lapse of time since the notes became due, strengthened, as that presumption was by other circumstances in evidence, to which we have referred. We think the finding of the court in the particular complained of was amply supported by the evidence. Evans v. Ashe, 108 S. W., 401; Walker v. Emerson, 20 Texas, 710; Grant v. Searcy, 35 S. W., 861; Morris v. Duncan, 25 S. W., 48; Reems v. Masterson, 80 Texas, 55; Frugia v. Trueheart, 48 Texas Civ. App., 513; Owen v. New York & T. Land Co., 11 Texas Civ. App., 284; Rivers v. Washington, 34 Texas, 275; Solomon v. Solomon, 3 So., 679; Shotwell v. McCardell, 19 Texas Civ. App., 174.

The assignment remaining to be considered is one complaining of the action of the court in admitting as evidence the report of the administrator of Snell's estate of the sale of the land, over appellants' objection thereto (1) that it did not conform to the application for the order nor to the order authorizing the sale, and (2) that it did not have to support it either an application for an order or an order authorizing the sale made by the administrator. The effect of the court's finding that the notes had been paid and the land conveyed to Snell was to establish an outstanding legal title in Snell's estate. Such an outstanding title was a complete defense to appellant's suit (Tobar v. Losano, 6 Texas Civ. App., 698; Jones v. Lee, 41 S. W., 195; Campbell v. Antis, 21 Texas Civ. App., 161), and if the assignment should be sustained, the judgment insofar as it denied a recovery by appellants would be a proper one.

But for other reasons we think the assignment should be overruled. In an inventory of property belonging to Snell's estate, filed by the administrator August 22, 1868, the land was described as "one-third of a league of land surveyed upon the headright certificate issued to D. D. Bruton." In another inventory filed August 10, 1874, it was again described as one-third of a league. The application, admitted as evidence, made by the administrator for an order authorizing the sale afterwards made by him of the land in question and other lands belonging to the estate, recited that "all of the property that had come to his hands as administrator as assets, consists of part

of four tracts of land which embrace all of said tracts except the 200 acres, including the homestead, which has not been particularly designated by metes and bounds. The said tracts of land are as follows: David D. Bruton 640 acres," etc., and without any further description asked that he be authorized to sell the lands. The order made by the court directed the sale of the lands described in the application, and the administrator to make report thereof to the court. The report objected to showed a sale by the administrator of the Bruton one-third of a league, and not for 640 acres thereof. The sale as reported was confirmed by an order of the court reciting as follows: "And it appearing to the court that said administrator in accordance with an order of this court granted at May term, 1877, did on the first Tuesday in July, 1877, sell," etc. So, it seems, the court in confirming the sale, construed its order directing it as covering the one-third of a league. The order was capable of such a construction. It recited that the administrator had applied for authority to sell, among other land belonging to the estate, "640 acres, D. D. Bruton," and directed him to sell "the land described in his petition." The lands described in his petition were "all of the property that had come to his hands as administrator as assets," consisting "of parts of four tracts of lands, which embrace all of said tract," etc. The Bruton one-third of a league, as shown by the inventories, and not 640 acres thereof, had "come to his hands as administrator." The application, therefore, read in connection with the inventories, we think might have been construed by the court as one to sell all of the Bruton survey. If the application might have been so construed the order directing a sale in accordance with it, also might have been, as it was, construed by the court when it confirmed the sale, as sufficient authority for selling the one-third of a league. Capable, as we think the order was, of such a construction, in support of the validity of the administrators' sale, as against the collateral attack made on it by appellants, we think it should now be so interpreted. Corley v. Goll, 8 Texas Civ. App., 184; Stroud v. Hawkins, 28 Texas Civ. App., 321; Crawford v. McDonald, 88 Texas, 626; Gillenwaters v. Scott, 62 Texas, 673.

If, however, the order should be construed as authorizing a sale of only 640 acres out of the survey of one-third of a league, the assignment of error complaining of the action of the court in admitting as evidence the administrator's report of the sale made by him should be overruled. Having authority to sell 640 acres, we think it would not follow that as to the 640 acres the sale was void because he attempted to sell a greater quantity. If it was not void, the purchaser at the administrator's sale became an owner in common with Snell's legal representatives of the one-third of a league, and as much entitled to hold the entire tract as against appellants. And if it should be held that the sale even as to 640 acres of the tract was void, because made in the absence of an order of the Probate Court authorizing it, the action of the court in admitting the report of sale may not have been such error as would justify this court in reversing the judgment in appellee's favor. The trial court found that the proceeds of the sale made by the administrator were used to pay debts due by Snell at the time of his death. In such a case, it has been held that the

purchaser becomes subrogated to the rights of the creditors of the estate and is entitled to retain possession of the land as against the debtor's heirs until the purchase price and interest thereon paid for the land is repaid to him. Stone v. Crawford, 1 Posey Unrep. Cases, 605; Freeman on Void Judicial Sales, sec. 53. If, as against Snell's heirs, appellee would be entitled to retain possession of the land, he certainly would be entitled to retain it as against appellants, who, in view of the finding by the court that the notes had been paid and that Millwee in compliance with his bond had conveyed .the land to Snell, should be treated as without a claim, legal or equitable, to the land. Jones v. Lee, 41 S. W., 195.

The judgment is affirmed.

*Affirmed.*