## Central Kentucky Traction Co. v. Glass' Admr.

(Decided June 14, 1911.)

### Appeal from Woodford Circuit Court.

Railroads—Private Crossing—Customary Signals—Contributory Negligence—Erroneous Evidence—Where it has been customary to give signals of the approach of cars to a private crossing, a recovery may be had for the death of a person caused by the failure of the cars to give reasonable signals of their approach to the crossing. In such a case where the only issue submitted to the jury is as to the signals being given and the contributory negligence of the person killed, the judgment will not be reversed for errors of the court in admitting testimony on other subjects which were in the end excluded from the consideration of the jury by the instructions of the court.

WALLACE HARRIS and STOLL & BUSH for appellant.

L. F. SINCLAIR and D. T. EDWARDS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

May Glass, a young lady, 19 years of age, lived with her parents at their home on the Versailles and Frankfort turnpikes about two miles west of Versailles, the house being about a quarter of a mile from the turnpike. A private road ran from the house down to the pike, and crossed near the pike the track of the Central Kentucky Traction Company which runs parallel with the pike and close to it. As the traction line comes up to the crossing it passes through a cut deep enough to prevent a person driving along on the road from seeing a car approaching on the traction line, and the person

so driving along would not be visible to those operating the car until the horse got very near the line of the railroad. On the morning of December 7, 1909, about 8 o'clock May Glass got in a buggy and started to Versailles. As she reached the line of the Traction Company a car running west about 35 miles an hour collided with the buggy killing her instantly. The horse had passed over the track; the car struck between the two wheels of the buggy. The horse was not injured but the buggy was demolished. It was a private crossing but it was customary for the cars to give notice of their approach to the crossing. This action was brought by the personal representative of the young lady to recover damages for her death on the ground that it was due to the negligence of those operating the car. The defendant traversed the allegations of the petition and pleaded contributory negligence on the part of the deceased. The proof for the plaintiff was that no notice of the approach of the car to the crossing was given. The proof for the defendant was that notice was given. The proof for the plaintiff was that the car was a little late, while that for the defendant was that the car was on time. It was undisputed in the evidence that it was customary for the cars to give signals of their approach to the crossing, On this evidence the court instructed the jury in substance as follows: (1) If it had been customary for the cars to give signals of their approach to the crossing, and the cus'om had prevailed to such an extent that persons using the crossing had reason to rely on such signals being given, and the car in question failed to give reasonable signals of its approach to the crossing, and by reason of such failure the intestate was killed, they should find for the plaintiff. (2) Reasonable signals are such as give such notice of the approach of the car to the crossing as might usually be expected of ordinarily prudent persons operating a railroad under like circumstances. (3) It was the duty of the deceased in approaching the crossing to use such care as may be usually expected of an ordinarily prudent person to learn of the approach of the car and keep out of its way. and if the deceased failed to exercise such care and but for this would not have been injured they should find for the defendant, though there was negligence on the part of the defendant as set out in No. 1. (4) Unless it had

been customary for the cars to give signals of their approach to the crossing and the custom had prevailed to such an extent that persons using the crossing had reason to rely on the signals being given, and the car in question failed to give reasonable signals of its approach to the crossing and by reason of such failure the deceased was killed, they should find for the defendant.

The jury found for the plaintiff fixing the damages at $4,000. The court entered judgment on the verdict refusing a new trial, and the defendant appeals.

It will be observed that the case was submitted to the jury upon only two questions: First, whether the car failed to give reasonable signals of its approach to the crossing and by reason of such failure the deceased was killed; second, whether she failed to use such care as may be expected of an ordinarily prudent person to learn of the approach of the car and keep out of its way, and but for this would not have been injured. While the proof on the trial took a wider range, it will be seen that the Court by its instructions confined the case to these two questions. The plaintiff could only recover upon the single ground that reasonable signals of the approach of the car were not given, and although the signals were not given, still she could not recover if she failed to use ordinary care for her own safety. It is insisted for the plaintiff that the court erred in the admission of evidence but all the matters complained of related to things that were excluded from the consideration of the jury by the instructions of the court. It is complained that the motorman was not allowed to state that the air brake was applied by him as soon as the danger was discovered and that it remained applied until after the accident. But the jury were not permitted to find against the defendant for this, and so the rejection of the evidence could have had no effect on the result. A witness was introduced by the plaintiff as an expert to testify as to the distance in which a car could be stopped. He said it could be stopped in a certain distance if the rail was dry, but that this did not apply if the rail was wet; that then the wheel would slip on the rail, and it could not be stated definitely how far the car would go. This evidence was objected to on the ground that the proof all showed that the rails were wet and the car going down grade. But the court took the whole matter

from the jury when he limited them to the question whether proper signals of the approach of the car were given. Some evidence was introduced as to whether the motorman could see the horse approaching the track and it is complained that the motorman was not allowed to testify on this subject, that he was looking down the track and not to the side; but this question was also taken from the jury by the instructions of the court. The defendant offered in evidence its train sheet as kept by its train dispatcher, and complains that certain statements of the train dispatcher were not admitted. We have carefully gone over the evidence and we conclude that there was no substantial error in this matter; that the defendant got before the jury in substance all that the train dispatcher knew, and if what was excluded had been admitted it could have had no effect upon the finding of the jury under the instructions. The train sheet was given in evidence.

It is insisted that the first instruction is wrong in that it required that reasonable signals should be given, and it is said that only the customary signals should have been required. It is true that cars may be run over private crossings at any speed and that notice of their approach to such crossings is not required unless it has been customary to give such signals, and persons using the crossing are accustomed to rely on them. But when signals are given they should be given reasonably. A signal that is not reasonable would be useless. A signal could serve no good purpose unless it was given time to warn the person approaching the crossing of his danger. The court, therefore, properly held that it was incumbent on the defendant to give reasonable signals of the approach of its cars to the crossing, if it had been customary for the defendant's cars to give signals of their approach to the crossing and this custom had prevailed to such an extent that persons using the crossing had reason to rely on the signals being given.

In L. & N. R. R. Co. v. Engleman, 135 Ky., 515, which was a case like this, we held that a signal was reasonable which was ordinarily sufficient to give notice of the coming of the car to persons who were themselves exercising ordinary care for their safety, and in possession of their ordinary faculties. It is insisted that the sec-

ond instruction of the court is in conflict with the rule there laid down; but a person of ordinary prudence operating a car may usually be expected to give such warning of its approach as would apprise of its coming persons exercising ordinary care for their own safety and in possession of their ordinary faculties. Under the facts of this case the difference between the two instructions is not material; for here it was maintained on one side that no signal was given, and on the other side that the signal was given. It was simply a question here under the evidence whether any signal of the car's approach was given.

It is also insisted that the third instruction is erroneous for the reason that if the crossing was especially dangerous it was the duty of the intestate to exercise increased care commensurate with the danger. (Southern R. R. Co. v. Winchester, 127 Ky., 154.) If this instruction had been given we are satisfied from all the proof it would have had no effect on the verdict. The jury had before them all the facts, and they found that the intestate exercised such care as may be reasonably expected of a person of ordinary prudence situated as she was.

The defendant also complains that the court refused an instruction asked by it to the effect that it had the right to run its cars over the crossing at any rate of speed it saw fit. But this instruction would not have elucidated any matters submitted to the jury; in fact, all the evidence as to the speed of the train was withdrawn from the consideration of the jury, by the instruction which required the jury to find for the defendant if reasonable signals of the approach of the car were given.

On the question of fact whether the signals were given and whether the deceased used ordinary care, we are unwilling to disturb the verdict of the jury on the ground that it is so against the evidence as to indicate passion or prejudice; and on the whole case we find no substantial error in the record to the prejudice of the defendant.

Judgment affirmed.