IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## EASTERN DIVISION.

KNOXVILLE, SEPTEMBER TERM, 1915.

MARION P. BURNETT *v.* R. R. LAYMAN.*

(*Knoxville.* September Term, 1915.)

1. CERTIORARI. Review. "Final judgment."

Acts 1907, ch. 82, provides that *certiorari* shall not be issued by the supreme court to the court of civil appeals after a lapse of ninety days from the final judgment or decree of that court. During the 1914 term of the court of civil appeals, after affirmance of a judgment for defendant plaintiff died, and a suggestion of death being made, it was attempted to revive the suit in the name of plaintiff's widow. A petition for *certiorari* prosecuted in the name of the widow and next of kin was denied by the supreme court and at the 1915 term of the court of civil appeals, an administrator having qualified, the suit was revived in the name of the administrator, who brought *certiorari.* Shannon's Code, sec. 4570, declares that the intervention of a term between the death of a party and the qualification of a personal repre-

---

*On degree of care and skill required of physician see note in 37 L. R. A., 830; on that required of a specialist see note in 20 L. R. A. (N. S.), 1030.

133 Tenn.]                    (323)

sentative shall not work an abatement or discontinuance of the suit, nor shall the suit abate or discontinue for the death of either party until the second term after the death has been suggested and entry to that effect made of record. *Held*, that the suggestion of death prevented the judgment of the court of civil appeals from becoming "final," though the attempted revival was a nullity, and hence the final judgment of the court of civil appeals was the order of revivor in the administrator's name, so petition for *certiorari* could be taken within ninety days therefrom. (*Post, pp.* 327, 328.)

Acts cited and construed: Acts 1907, ch. 82, sec. 8.

Case cited and distinguished: Burnett v. Layman, 130 Tenn., 423.

Code cited and construed: Secs. 4025-4029; 4570; 4579.

2. **PHYSICIANS AND SURGEONS.** Care.

While a physician does not guarantee the cure of his patients, and is not liable for an error in diagnosis, yet in performing an operation he is employing surgery as an art, and is liable for negligence. (*Post, pp.* 328, 329.)

Cases cited and approved: Alder, Admr. v. Buckley, 31 Tenn., 69; Wood v. Clapp, 36 Tenn., 65; Staloch v. Holm, 100 Minn., 276; Gillette v. Tucker, 67 Ohio St., 106; Whitesell v. Hill, 37 L. R. A., 834.

3. **PHYSICIANS AND SURGEONS.**    Actions for malpractice. Evidence.    Sufficiency.

In an action for injuries received when defendant sounded the urethra, evidence *held* to warrant a finding of negligence. (*Post, p.* 329.)

4. **PHYSICIANS AND SURGEONS.**    Malpractice.    Negligence.

A physician after he had seriously injured his patient in sounding the urethra, causing keen suffering and bleeding, is not warranted in leaving his patient without giving immediate relief, for a doctor who undertakes the treatment of a case may not abandon his patient until the facts justify cessation of attention or he gives the patient due notice that he intends to quit the

Burnett v. Layman.

case and an opportunity to procure other medical attention. (*Post, pp.* 329, 330.)

Cases cited and approved:   Dale v. Donaldson L. Co., 48 Ark., 188; Barbour v. Martin, 62 Me., 536; Ballou v. Prescott, 64 Me., 305; Williams v. Gilman, 71 Me., 21; Dashiell v. Griffith, 84 Md., 363; Becker v. Janinski, 15 N. Y. Supp., 675; Lathrope v. Flood (Cal.), 63 Pac., 1007.

### FROM KNOX.

Appeal from the Circuit Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— VON A. HUFFAKER, Judge.

W. F. BLACK, for appellant.

FRANK SANDERS, for appellee.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought to recover damages for alleged malpractice from the defendant, a physician, at Knoxville.

The circuit court directed a verdict in favor of defendant, and the judgment entered was affirmed in the court of civil appeals at its Knoxville term, 1914. During the same term of the court of civil appeals the plaintiff died, and an effort was made to revive the suit in that court in the name of Manda Burnett, "his

widow and next of kin," under section 4025-4029, Shannon's Code, and a petition for *certiorari* was prosecuted to this court in the name of said Manda Burnett, his widow and next of kin.

We dismissed this petition (130 Tenn., 423, 171 S. W., 76), holding that the sections of the Code just referred to governing an action in case of death by wrongful act had no application to the present case, but that this case fell within the terms of Shannon's Code, section 4579, which provides that:

"Suit abated by the death of either party, may be revived by or against the heir, personal representative, guardian, or assign, as the case may be, who may be legally entitled to the decedent's place in the subject-matter of litigation."

The court said:

"The personal representative is in the present case the successor in interest of the deceased plaintiff, or, in other words, the one 'legally entitled to the decedent's place in the subject-matter of the litigation,' and the suit should therefore have been revived in his name." *Burnett* v. *Layman,* 130 Tenn., 423, 425, 171 S. W., 76.

At the 1915 Knoxville term of the court of civil appeals, an administrator having meanwhile qualified, the suit was revived in the name of said administrator in that court, and a petition for *certiorari* to this court has been filed by the said administrator at our present term.

Burnett v. Layman.

The first question that arises is whether this petition for *certiorari* can be sustained under section .8, ch. 82, Acts of 1907, providing that *certiorari* shall not be issued by this court to the court of civil appeals after a lapse of ninety days from the final judgment or decree of that court. In view of this statutory provision, can this court now review a judgment of the court of civil appeals entered at its 1914 term at Knoxville? Under the circumstances of this case, we think we have such power.

Section 4570 of Shannon's Code is as follows:

"The intervention of a term between the death of a party and the qualification of a personal representative shall not work an abatement or discontinuance of the suit; nor shall the suit abate or discontinue for the death of either party, until the second term after the death has been suggested and proved or admitted, and entry to that effect made of record."

A suggestion of the death of plaintiff was made and entered of record in the court of civil appeals when the attempt was made to revive in the name of the widow. The attempted revivor in this manner was beyond the court's jurisdiction and a mere nullity, but the suggestion of death was made and admitted and entered of record.

Plaintiff's death deprived the judgment of the court of civil appeals of its final character. No execution could have issued thereupon until revivor; nor could the suit have been abated or discontinued for two terms under the express provisions of Shannon's Code, sec-

tion 4570, above quoted. Something else remained to be done in the court of civil appeals.

Therefore the final judgment in the court of civil appeals herein was the order of revivor in the administrator's name duly made by that court under section 4570, Shannon's Code, at its 1915 term, and this petition for *certiorari* comes within ninety days from that order and was properly allowed.

Burnett was being treated for a bladder trouble, and it was thought necessary by the defendant to sound the urethra. In the performance of this operation there is some evidence tending to show that the lining of the bladder was "pocketed" or perforated by the sound.

A physician does not guarantee the cure of his patients. Presuming a careful diagnosis, a physician is not liable for damages resulting from an honest mistake in determining upon the character of treatment to be administered or in determining upon the necessity of an operation. These things are mere matters of judgment upon which an action cannot ordinarily be predicated.

While it is sometimes difficult to distinguish between negligence and an error of judgment, it may be said, generally speaking, that in performing an operation the doctor is employing surgery as an art, and he is liable for negligence in operating. The foregoing statement is supported by the following authorities: *Alder, Adm'r,* v. *Buckley,* 1 Swan. 69; *Wood* v. *Clapp,* 4 Sneed, 65; *Staloch* v. *Holm,* 100 Minn., 276, 111 N. W., 264, 9 L. R. A. (N. S.), 712; *Gillette* v. *Tucker,* 67 Ohio

St., 106, 65 N. E., 865, 93 Am. St. Rep., 639; *Whitesell*
v. *Hill,* 37 L. R. A., 834, note 5.

So in this case, while the defendant cannot be held
liable for an error of judgment in determining upon
the sounding operation, he is liable for any negligence
in the actual performance thereof. Some of the evi-
dence introduced for plaintiff indicates that the defend-
ant below did not exercise the care which an ordinarily
prudent physician should have employed in his manner
of using the sound. In fact, in the absence of any ex-
planation whatever from defendant it might have been
inferred by the jury that the lining of the bladder
would not have been perforated if due care had been
used.

Another count of the declaration seeks to hold the
defendant liable on account of his abandoning the case,
and we think there is evidence to sustain this count.

It appears that when this sound was introduced the
plaintiff heard something pop, and the withdrawal of
the sound was followed by a flow of blood and pus.
The defendant appeared excited, announced that he
was no surgeon, and told plaintiff he must procure a
surgeon. Defendant then hurriedly left, without any
effort to relieve plaintiff or administer to him further.
Plaintiff did not procure another doctor until the next
day or day thereafter.

It is well settled that a physician who undertakes the
treatment of a case may not abandon his patient until
in his judgment the facts justify the cessation of atten-
tion, unless he give to the patient due notice that he

intends to quit the case and affords the patient opportunity to procure other medical attendance. *Dale* v. *Donaldson L., Co.,* 48 Ark., 188, 2 S. W., 703, 3 Am. St. Rep., 224; *Barbour* v. *Martin,* 62 Me., 536; *Ballou* v. *Prescott,* 64 Me., 305; *Williams* v. *Gilman,* 71 Me., 21; *Dashiell* v. *Griffith,* 84 Md., 363, 35 Atl., 1094; *Becker* v. *Janinski,* 15 N. Y. Supp., 675; *Lathrope* v. *Flood* (Cal.), 63 Pac., 1007.

What is fair notice to a patient depends upon the circumstances of each case. In *Lathrope* v. *Flood,* supra, the doctor left his patient, a woman during parturition, on account of her screams, and she was unable to procure another doctor for an hour. The court held him guilty of negligence and unprofessional conduct and sustained a judgment in favor of the woman against him.

In the case before us the plaintiff below appears to have been suffering greatly, bleeding, and in need of immediate attention when the defendant abandoned him. Certainly the defendant should have done something in this pressing case to have relieved the distress of his patient. We think the defendant is liable for his conduct. He should have remained with the plaintiff until immediate sufferings were relieved, or until another doctor had been secured.

The case will be reversed and remanded for a new trial.