## URRUTIA v. PATINO et al. (No. 8044.)

Court of Civil Appeals of Texas. San Antonio. Oct. 17, 1928.

Rehearing Denied Nov. 14, 1928.

Hicks, Hicks, Dickson & Bobbitt, Hertzberg & Kercheville, and Ball & Seeligson, all of San Antonio, for appellant.

Newton & Woods and Louis L. Souvier, all of San Antonio, for appellee.

COBBS, J. This suit was by Mrs. Trinidad Patino, for herself and as next friend for her children, Viola and Olga, seeking to recover damages against Dr. Aureliano Urrutia for the death of her husband, Edward M. Patino. The total judgment recovered was $7,500.

This is the second appeal of this case. The first appeal appears in 297 S. W. page 512. As the facts are so nearly the same in the two cases, we adopt the statement of that case, marking or noting herein the difference, if any, in the two cases.

This case was submitted to the jury on but two issues:

"Was the defendant, Dr. Urrutia, guilty of negligence in the administration of the injection or injections, if any, to Edward M. Patino composed of the substances that they were composed of and in the manner and quantity so administered? Answer 'Yes' or 'No.'

"After administering the treatment to Edward M. Patino, and prior to the date Dr. Goodson was called on the case, July 27th, 1925, did the defendant, Dr. Urrutia, after having been called, if he was called, fail to wait upon and treat the said Edward M. Patino?"

To the first question the jury answered, "No," thereby eliminating any question of "negligence in the administration of the injection or injections, if any, to Edward M. Patino, composed of the substances that they were composed of in the manner and quantity so administered." This was one of the issues in the case, and the jury eliminated that issue of negligence.

The other issue of negligence was that "Doctor Urrutia, after having been called, if he was called, failed to wait upon and treat Edward M. Patino." He refused to attend, because he did not go outside of his office to practice his profession, unless it was an emergency, and this was not shown to be an emergency case, as the deceased lived several months thereafter. Thereafter deceased's wife employed other learned and competent physicians, who undertook at once to and did give him the best of care and skilled treatment. Appellee knew that appellant confined himself to office practice, and there is no evidence that the case was of such a nature as to demand a quick remedy. There is no fact proven or shown that appellant was negligent in not calling on Edward Patino that Sunday evening, or that if he had he would have been relieved and would not have died.

Now, when appellant refused to call on the patient, other physicians were called in, who treated him until he died, and it is not clear that he had syphilis at all, for Dr. Urrutia gave only the one injection, which was on the 23d day of July; and the physicians in the case testified the substance injected would not cause death. Dr. Goodson, who treated him from the very beginning up to his death, testified that he did everything a medical man could do for him, and stated the cause of his death was from septic infection of the bladder, for the duration of four months; contributory: spinal cord injury, cause undetermined, causing paralysis. Dr. Dorbandt, another learned and skillful physician, treated the deceased with Dr. Goodson, and stated it was a case of poliomyelitis, or infantile paralysis of the brain and spinal cord. The gravamen of this case centers around the point that Dr. Urrutia did not go to see the patient when called but there is no evidence to show that the patient would not have died if he had gone. We expressed ourselves fully in the original opinion on this particular point.

█ This states the only issue: Was it negligence for the doctor to refuse to call and treat the deceased on the Sunday in question, and was it such negligence as to be the proximate cause of his death? We think not. Lawson v. Conaway, 37 W. Va. 159, 16 S. E. 567, 18 L. R. A. 627, 38 Am. St. Rep. 17; Lathrope v. Flood, 6 Cal. Unrep. Cas. 637, 63 P. 1007; Lee v. Moore (Tex. Civ. App.) 162 S. W. 440; 30 Cyc. pp. 1573, 1574; Cooley on Torts (3d Ed.) p. 99; G. H. & S. A. Ry. Co. v. Hanway (Tex. Civ. App.) 57 S. W. 695. "The death must be the natural and probable result of the negligence, one that could have been foreseen, else the negligence is not the probable ca--se."

This is not a case of malpractice, in which plaintiff might recover if the fact had been established that the surgeon negligently failed in his duty to the injury of the patient, but is an action where there can be no recovery unless the plaintiff proved that the failure of appellant to perform his professional duty to visit the deceased at his home was the direct cause of the death of the patient.

In other words, the jury have found in favor of defendant on the question of negligence in administering the medicine, but found against defendant on the issue of the failure to visit deceased at his house on Sunday.

We have carefully gone over the record in this case and find it free of error, except that the court should have instructed a verdict as requested by appellant.

The judgment of the trial court is reversed, and judgment is here rendered for appellant, with costs of court.

## On Motion for Rehearing.

In our original opinion, in discussing the second ground of negligence submitted by the trial court, which was to the effect that Dr. Urrutia, after having been called, failed to wait upon and treat Edward Patino, we used the expression, now corrected:

"He refused to attend, because he did not go outside of his office to practice his profession, unless it was an emergency, and this was not shown to be an emergency case, as the deceased lived several months thereafter."

Our use of the words, "He refused to attend," is slightly, incorrect for the reason that Dr. Urrutia testified that he did not refuse to attend, because he never received the call.

There is no positive testimony in the record that Dr. Urrutia administered to Patino neo-salvasan or any poisonous drug; but, on the contrary, Dr. Urrutia testified that what he did administer was ferro-arsen, a harmless drug used for the purpose of building up a depleted system, and this idea was supported by the testimony of other physicians. The only testimony to the contrary was from Mrs. Patino, the widow, who testified that what the doctor administered was medicine of a yellowish hue, and it appeared that ferro-arsen was of a reddish hue, and as neo-salvasan was of a yellowish hue it might be presumed that neo-salvasan had been administered, but there was no proof as to this; but be this as it may, the jury found that whatever it was that the defendant administered it did not cause Edward Patino any harm, and that issue of negligence was found by the jury in the defendant's favor, leaving, as the one and only ground of negligence found in plaintiff's favor, the one as stated above with reference to the defendant's failure to call upon and treat Patino on Sunday, July 26, 1925.

The undisputed facts in this case are that on July 23, 1925, an injection was given to Patino by Dr. Urrutia. On the next day, Friday, Patino did not go to his work, but on the following day, Saturday, July 25, Patino worked all morning and called at Dr. Urrutia's office that afternoon. The next day, Sunday, July 26, the plaintiffs claim they called Dr. Urrutia to come and visit Edward Patino, but Dr. Urrutia claims he did not receive this message. Be that as it may, he did not visit Patino on Sunday, July 26. Then what happened? On the next day, Monday, July 27, the plaintiffs called in Dr. Goodson, who came immediately, treated Patino for 4½ months, and did everything that any medical man could do for him, and he testified that Patino died from septic infection of the bladder. A few days later Dr. Dorbandt was called in the consultation and visited Patino 12 or 15 times before his death, 4½ months afterwards.

Dr. Dorbandt's diagnosis was that Patino died from infantile paralysis, a disease of the brain and spinal cord; hence it cannot be said that even if the defendant had visited Patino on that Sunday, July 26, he could have done anything to prevent Patino's death, 4½ months afterwards; hence no negligence on the part of the defendant in failing to visit Patino on Sunday, July 26, was shown, and even if this fact could be charged against Urrutia as negligence, Patino's death must have been the natural and probable result of such negligence, one that could have been foreseen, else the negligence is not the probable cause of Patino's death. G. H. & S. A. Ry. Co. v. Hanway (Tex. Civ. App.) 57 S. W. 695; Mella v. Northern S. S. Co. (C. C.) 162 F. 512; Milwaukee & St. P. Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Empire State Cattle Co. v. A. T. & S. F. R. Co. (C. C.) 135 F. 135; U. S. F. & G. Co. v. Des Moines National Bank (C. C. A.) 145 F. 273; Cole v. German Savings & Loan Association (C. C. A.) 124 F. 113, 63 L. R. A. 416; Cochran's Adm'r v. Krause, 144 Ky. 202, 137 S. W. 1054; Gores v. Graff, 77 Wis. 174, 46 N. W. 48.

And the fact that Dr. Urrutia stated that if he had been left in charge of the case he could have cured Patino is of very little im-

portance, because the question is whether he could have saved his life by calling on him that day, Sunday, July 26. He testified, and it was his opinion, that if he had had the opportunity to treat the man he could have cured him. This has no meaning except that he should have had full charge of the case during the entire illness. The appellees prevented this by calling in other physicians the following Monday and by not requesting the services of Dr. Urrutia again. Having been relieved of his duties by appellees, they cannot be heard to complain of the fact that if he had continued to treat Patino he could and would have cured him and thus done more than any other physicians did or could have done.

Special Issue No. 7, "Was the death of Edward M. Patino due to other causes than the alleged negligence or treatment of him by defendant, Dr. Urrutia?" was a defensive issue and amounted to nothing more than the converse of the second ground of negligence and to question No. 5 thereunder. It was another finding by the jury that the failure to visit Patino on Sunday, July 26, was the only cause of his death, and that it was not due to a disease or other cause. This had already been found by the jury in answer to question No. 5. Manifestly, the failure to visit him in itself could not be the sole cause of his death, because necessarily he must have had some disease or ailment producing the condition calling for treatment and which condition culminated in his death.

■ Even if it be admitted that Dr. Urrutia was guilty of negligence in failing to visit Patino on Sunday, July 26, there was no causal connection between that negligence and the death of Patino, which occurred 4½ months afterwards, and it is clear that the burden was upon the plaintiffs to establish causal connection between the negligence alleged and proven and the death. Causal connection can no more be presumed than the negligence itself. Neither can rest upon mere presumption, but both must be proved, and there must be some tangible fact or circumstance from which the jury might reasonably conclude that the alleged negligent act brought about the death. Houston E. & W. T. R. Co. v. McHowell (Tex. Civ. App.) 278 S. W. 258; Bock v. Fellman Dry Goods Co. (Tex. Civ. App.) 173 S. W. 582; Chicago, R. I. & G. Ry. Co. v. Latham, 53 Tex. Civ. App. 210, 115 S. W. 891; Southern Kansas Ry. Co. of Texas v. Emmett (Tex. Civ. App.) 139 S. W. 48; Cincinnati, N. O. & T. P. Ry. Co. v. Perkins' Adm'r, 177 Ky. 88, 197 S. W. 526; Hughes v. Cincinnati, etc., Ry. Co., 91 Ky. 526, 16 S. W. 275; Cincinnati, N. O. & T. R. Co. v. Zachary's Adm'r (Ky.) 106 S. W. 843; Warner v. St. Louis, etc., Ry. Co., 178 Mo. 125, 77 S. W. 69; Wichita Falls & N. W. Ry. Co. v. Cover, 65 Okl. 110, 164 P. 662.

We have given unusual care and consideration to this case. We have again read, with very much interest and benefit, the masterful brief, argument, and then the motion for rehearing, but find no cause to change our opinion. We think the case is without any merit, and therefore deny the motion for a rehearing.