### J. T. TALLEY ET AL. v. LAMAR COUNTY.

No. 2167.  Decided May 24, 1911.

**1.—Evidence—Judgment—Parties—Title.**

A judgment in favor of a county in an action against the Republic of Texas, establishing the right of the county to a grant of school land, and the survey, etc., showing the steps taken to locate and secure the land so obtained, were admissible in evidence against defendants claiming the land adversely to the county, though they were not parties to such former proceedings. The evidence constituted a link in and preliminary part of the proof of the steps by which the plaintiff acquired title. (Pp. 302, 303.)

**2.—Evidence—Certificate of Land Commissioner.**

Under the authority given by article 2253, Revised Statutes, the Commissioner of the General Land Office may properly certify, not only to the correctness of copies of the records of his office, but to "facts contained in papers, documents and records of his office," and such certificate is admissible in evidence where such facts are in issue. But he is not authorized to certify to facts within his knowledge gained from other sources than the

records of his office, nor to conclusions of fact drawn from his examination of such records. The admission of such certificate is, however, held not ground for reversal in this case, because not affecting the judgment required. (Pp. 303, 304.)

### 3.—Res Adjudicata—Agreement to Abide Ruling—Dismissal.

A suit having been continued under agreement to abide the result of a pending appeal in a case against other defendants involving similar issues, was, on affirmance of the judgment therein in favor of such other defendants, dismissed for want of prosecution. Held, that there was no adjudication of the issues in such dismissed suit; to constitute a judgment on the merits thereof, the agreement should have been followed by a judgment in accordance; the dismissal was an abandonment of it, not a carrying out. (Pp. 304, 305.)

### 4.—County School Land—Location and Survey—Return of Field Notes.

The laws providing for the granting location and survey of county school land (Const. of Republic, sec. 5; Act of Jan. 26, 1839, Laws of Republic, 3d Cong., p. 134, Paschal's Dig. art. 3464; Act of Jan. 16, 1850, Laws, 3d Leg., p. 37, Pasch. Dig., art. 3468) provide special proceedings, complete in themselves, for the location, survey and appropriation to the several counties of the lands so granted, containing no limitation of time for the return of the field notes thereof to the General Land Office. These grants were not subject to the general statutes regulating surveys and forfeiting locations on failure to return the field notes in accordance therewith (Act of Jan. 26, 1839, Laws of Republic, 3d Cong., p. 134, Paschal's Dig., art. 3466; Act of Feb. 10th, 1852, Laws, 4th Leg., p. 58, Paschal's Dig., art. 4562, sec. 2). Milam County v. Robertson, 33 Texas, 366; Fannin County v. Riddle, 51 Texas, 360; Milam County v. Bateman, 54 Texas, 153, followed. (Pp. 305-309.)

### 5.—Same.

Location, survey, and steps taken by a county for the acquisition of school land under the grant of a certificate therefor held to be a substantial compliance with the requirements of the law, and to confer title on the county as against a subsequent locator and patentee. (Pp. 305-309.)

### 6.—County School Land—Abandonment of Claim.

The action of the Commissioners Court in authorizing an agent to lift a lawfully located certificate for county school land, and relocate same elsewhere, no action being taken by such agent nor new location being made, and the county remaining charged by the State with the land as located as a part of its quota of school land, constituted no abandonment of its location. Having acquired a right to the land located as a trust fund for the county, the Commissioners Court could not abandon the county's title till it acquired other lands in lieu thereof. Milam County v. Blage, 54 Texas, 169; Snyder v. Methvin, 60 Texas, 487; Milam County v. Bateman, 54 Texas, 163; Hamilton v. Avery, 20 Texas, 635, followed. (Pp. 309, 310.)

### 7.—County School Land—Trespass to Try Title—Limitation—Improvements.

One in possession of county school land can not assert limitation against the county, nor, on its recovery by the county in trespass to try title, can he have judgment for the value of the improvements made by him thereon, though his possession was in good faith under claim of title. (Pp. 310, 311.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Delta County.

Lamar County sued Talley and others for the recovery of land. Defendants had judgment, which on plaintiff's appeal was reversed and rendered in its favor. Appellees thereupon obtained writ of error.

*J. L. Young,* for plaintiffs in error.—The petition, judgment, and other proceedings in the suit of "Lamar County v. Republic of Texas" had no connection with this suit, was ex parte, and applicants were

not parties thereto, and it could in no way bind or affect their rights. The survey and field notes of this land conferred no right or title on plaintiff because the field notes were not returned to the General Land Office within twelve months and were not filed or recorded in Hopkins County, where the land was situated. Rev. Stats., arts. 2322, 4152, 4175, 4176, 4269.

The ex parte certificate of the Commissioner of the General Land Office was inadmissible. Fisher v. Ullman, 3 Texas Civ. App., 322; Meyers v. Jones, 4 Texas Civ. App., 332; Gaither v. Hanrick, 69 Texas, 92; Edwards v. Barwise, 69 Texas, 84; Smithwick v. Andrews, 24 Texas, 488; Howard v. McKinzie, 54 Texas, 170; Smithers v. Lowrance, 91 S. W., 606; Smithers v. Lowrance, 100 Texas, 77.

The judgment of the court and disposition of the case of Lamar County v. Verner was res adjudicata of the rights asserted by the county in this suit, and estopped the county. Hunton v. Nichols, 55 Texas, 217; Fordyce v. Dixon, 70 Texas, 694; Giddings v. Day, 84 Texas, 605; Johnson v. Galbraith, 17 Texas, 364; Punderson v. Love, 3 Texas, 60; Wilkerson v. Schoonover, 77 Texas, 615; Crane v. Blum, 56 Texas, 325; Gibson v. Hale, 57 Texas, 405.

The disposition of the Nidever case by the agreement and action of the court were as effectual and binding as if that case had been tried instead of the Verner case; and the agreement having been made with whomsoever were interested parties or their representatives, or whomsoever Lamar County saw proper and fit to agree as to the disposition of the suit and title to the land, it can not now deny the binding force of the agreement and the adjudication and settlement of the title; and the court erred in holding that the same does not now bar and estop Lamar County in this present action. Rodrigues v. Priest, 126 S. W., 1187.

The court erred in overruling applicants' pleas of res adjudicata and estoppel, and in rendering judgment for Lamar County, and for the reason that the disposition and judgment in the Nidever case have never been opened up, set aside, or vacated, and remains in full force and effect, and can not be set aside, vacated, or annulled in a collateral attack like in this case. Hume v. Schintz, 90 Texas, 72; McGee v. Romatka, 92 Texas, 38; Patrick v. Roach, 21 Texas, 251; Cooper v. Mayfield, 94 Texas, 107; 23 Cyc., 1129 to 1130, and from 1134 to 1135; 23 Cyc., 1285; 11 Ency. of Amer. & Eng. Law, 390-1, and notes.

Lamar County had only an incomplete and inchoate claim or title to the land, and it could have been and was abandoned by the said action of the Commissioners Court, and the court erred in holding that the said land was not abandoned by Lamar County so as to bind it. Sideck v. Doran, 67 Texas, 250; Tiebout v. Millican, 61 Texas, 514; Dikes v. Miller, 24 Texas, 417; Coal Co. v. Phillips, 21 Texas Civ. App., 292; Phillips v. Land Co., 90 Texas, 195; Simpson v. McLemore, 8 Texas, 448; Hollinsworth v. Holshouson, 17 Texas, 41; Keith v. Guedry, 122 S. W., 17.

*Burdett & Connor,* for defendant in error.—Before any testimony can be admitted to show any former adjudication in favor of John

Nidever and against Lamar County, it is incumbent on appellees to specially plead that they hold title under said John Nidever, and thus put appellant on notice of what is expected to be proved. Mims v. Mitchell, 1 Texas, 443; Philipowski v. Spencer, 63 Texas, 606; Martin v. Weyman, 26 Texas, 460.

The Acts of January 26, 1839, February 5, 1840, and the other provisions of the various Constitutions and statutory enactments subsequent thereto, granting lands to the several counties for school purposes, operated as appropriations for a specific purpose and when the lands were segregated from the public domain, by an actual location and survey, they ipse facto became the property of the county making the survey and were not subject to location and survey by any settler or claimant under any of the grants by the State to private individuals. Paschal's Digest, arts. 3464-3476; Constitution of 1845, P. D., p. 71; Constitution of 1866, P. D., pp. 944-5; Fannin County v. Riddle, 51 Texas, 368; Henderson County v. Shook, 51 Texas, 370; Keuchler v. Wright, 40 Texas, 607; Milam County v. Bateman, 54 Texas, 164; Milam County v. Robertson, 33 Texas, 366; Wylie v. Wynne, 26 Texas, 42; Murphy v. Luttrell, 120 S. W., 905.

In determining the priority of rights and title to lands reference will be had to the time of location and survey, and these, when made in accordance with a valid certificate or claim, will prevail over a patent subsequently issued. Milam County v. Bateman, supra; Creswell v. Waldstean, 28 S. W., 262; Hamilton v. Avery, 20 Texas, 635; Whitman v. Rhomberg, 25 S. W., 451; Hollingsworth v. Holshausen, 25 Texas, 628; Sherwood v. Fleming, 25 Texas Supp., 408; Johnson v. Eldridge, 49 Texas, 520; Wright v. Hawkins, 28 Texas, 471.

After public land has been surveyed it is equitably owned so that patent issued therefor subsequently to another is void and conveys no title. After the survey of the lands sued for by and for Lamar County in 1854, and the return of the field notes as were done thereafter, any patent issued, conveying the same lands to others was absolutely void and without authority of law. Wylie v. Wynne, 26 Texas, 43; Constitution of 1876, art. 14, sec. 2; Massey v. Railway Co., 7 Texas Civ. App., 650; Adams v. Railway Co., 70 Texas, 253; Windsor v. O'Connor, 69 Texas, 571; Besson v. Richards, 24 Texas Civ. App., 64; McWhorter v. Allen, 1 Texas Civ. App., 625.

If Lamar County had appropriated the lands in controversy by a valid location and survey, then subsequent locators must at their peril take notice of her rights. Milam County v. Bateman, 54 Texas, 168; Wylie v. Wynne, 26 Texas, 42.

Neither the appellees nor those under whom they claim could set up the facts that they or any of them were innocent purchasers. In the absence of actual notice the filing of the field notes by Lamar County in the office of the surveyor of Lamar and Hopkins Counties, in the office of the county clerks of said counties, and in the Land Office at Austin were constructive notice of the appropriation of the land by Lamar County. Creswell v. Waldstein, 28 S. W., 262; Sickles v. Epps, 8 S. W., 125; Jackson v. Waldstein, 27 S. W., 27; King v. Ellison, 30 Texas, 252; Fagan v. Byrne, 16 Texas, 391; Nickolson v. Horton, 23 Texas, 51; Wilson v. Williams, 25 Texas, 64.

Neither the statute of limitations nor the plea of stale demand is available to the appellees as a defense to this suit. The claim of the appellant belongs to a class of actions against which limitation does not run. P. D., art. 3470; Constitution 1876, art. 7, sec. 6.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This is a suit to recover about 264 acres of land, situated in Delta County, brought by Lamar County, plaintiff below, against John T. Talley, John Thomas and R. R. Stewart, defendants below. Plaintiff's allegations are those usually contained in actions of trespass to try title. The defendants answered by a plea of general denial and not guilty, and, in addition thereto, interposed specially the plea of res adjudicata in bar of the plaintiff's right to recover the land sued for. This special plea was based upon the allegations that on or about the 28th day of September, in the year 1877, the plaintiff at the same time, in the same court and by the agency of the same attorneys instituted two separate suits, one for the recovery of 2382 acres of land in Delta County, against Thos. T. Verner et al., which was numbered on the docket as 206, and the other for 264 acres of land in Delta County, against John Nidever et al., which was numbered on the docket as 207. That the defendants in the two suits were not the same, but that both tracts of land were sued for as the school land belonging to plaintiff. That it was agreed by the attorneys representing the plaintiff and those representing the defendants in the suit to recover the 264 acres of land; that the first suit involving the title to the 2382 acres should be first tried and that the second suit should abide the result of the first suit; that the first suit No. 206 was tried and judgment rendered in the lower court for the defendants and against the plaintiff, which was appealed to the Supreme Court and by that court affirmed. With reference to this special plea defendants pleaded a part of their evidence, which was, that on the trial docket this note was made: "To abide the decision of 206 now in Supreme Court," and this memorandum of the agreement was carried into the minutes of the trial court. That the Nidever suit No. 207 was continued from term to term, and after the Verner suit, No. 206, was affirmed, was dismissed from the docket.

The defendants further pleaded abandonment on the part of plaintiff of its location of the 264 acres, the statute of three, five and ten years limitation by appropriate allegations, and suggested improvements in good faith, aggregating $5986.

Upon special exceptions by plaintiff the pleas of limitation and suggestion of improvements in good faith were stricken out.

The cause was tried by the court without a jury and judgment rendered for defendants for the land sued for. The plaintiff appealed to the Court of Civil Appeals of the Fifth District, and that court reversed the judgment of the trial court and rendered judgment for the plaintiff, Lamar County. The cause comes to this court upon petition for writ of error by the defendants J. T. Talley et al.

The facts found by the Court of Civil Appeals, and which are conclusive on this court, are as follows:

"On April 16, 1841, a judgment or order of survey was rendered

by the District Court of Lamar County, at the suit of the justices of the County Court, and ex-officio board of school commissioners of Lamar County, directing that four several orders of survey for one league each of land be issued by the clerk to the aforesaid board of school commissioners, for the benefit of the county school fund, as provided for in the aforesaid Acts of 1839 and 1840. In accordance with said decree a certificate was duly issued by the clerk of the District Court of Lamar County, certifying to the fact that Lamar County was entitled to have the aforesaid amount of land surveyed for school purposes. On the 16th day of November, 1854, the land described in appellant's original petition, 264 acres, was surveyed by William Evans, a deputy surveyor, which survey was afterwards approved and certified to by J. T. Harmon, district surveyor of Lamar land district, on the 13th day of February, 1855. The land was situated and surveyed in what was then Hopkins County, but now Delta County, and about four miles a little east of south from the town of Cooper. The field notes of this survey were recorded in the office of the surveyor of Lamar County on the 13th day of February, 1855, in the office of the surveyor of Hopkins County on the same, and in the office of the county clerk of Lamar County on the 16th day of March, 1860. After the formation of Delta County in 1870, the field notes were recorded in the office of the county clerk of Delta County on the 8th day of September, 1877. There is no evidence, we think, as to whether or not they were ever recorded in the office of the county clerk of Hopkins County. A part of the lands sued for was delineated on the official map of Hopkins County, as shown by the map of the county made in 1863, as Lamar County school land. At or about the same time the said 264 acres of land were surveyed another tract of 2362 acres situated then in Hopkins County, but now in Delta County was also surveyed for plaintiff, as a part of its school land, under said Acts of 1839 and 1840, and the field notes thereof were approved and recorded in the county clerk's office of Lamar County, in the surveyor's office of Lamar, Hopkins and Delta Counties, and in the General Land Office at Austin, on the same date. J. J. Nidever settled on 160 acres of the 264 acres of land in controversy as a preemptor under the Act approved February 13, 1854, and had the same surveyed February 17, 1857. He proved up his preemption claim, and June 31, 1862, received from the chief justice of Hopkins County a certificate, No. 131, of his occupancy, etc., and July 1, 1873, by virtue of said certificate, said 160 acres of land was patented to him. At the beginning of the Civil War J. J. Nidever joined the Confederate army and has not been heard of since the battle of Shiloh. He had a wife and two daughters, who continued to live on the land until about the close of the war in 1865, when his wife died and left as their only children said two daughters. These daughters were too young to remain on the land after their mother's death and went to live with relatives, but the land continuously since the death of Mrs. Nidever has been occupied by tenants of her said two daughters or persons claiming the land as purchasers. That part of the 264 acres of land not patented to J. J. Nidever was fenced by J. F. Sinclair in February, 1885, sur-

veyed for preemption December 10, 1889, and patented to him November 5, 1895. Except as to the eighty acres of land claimed by the appellee, J. T. Talley, the defendants introduced a regular chain of transfers from and under the said patentees of said land or their heirs and assigns to themselves and showed that they and those under whom they claim had at the time of the trial been in actual adverse possession of their respective tracts under deed duly registered, cultivating and paying taxes on the same for more than ten years next before the filing of this suit. The evidence showed a deed from T. A. Sinclair and wife to J. R. Crisp; a judgment in favor of Joel Kayes against J. A. Wells and J. R. Crisp for $407.25 and foreclosure of vendor's lien on said eighty acres and directing it to be sold to satisfy said judgment; a sheriff's deed, but no order of sale or execution was shown or introduced in evidence. On September 28, 1877, the appellant, Lamar County, instituted two suits in the District Court of Delta County in trespass to try title for the recovery of its school lands situated in the county. One of said suits was styled Lamar County v. Thos. T. Verner et al., and numbered 206 on the docket of said court, and was for the recovery of the larger tract of 2362 acres of said lands heretofore mentioned; the other was styled Lamar County v. John Nidever and numbered 207 on the docket of said court and was for the recovery of the 264 acres of land in controversy in this suit. John Nidever, the defendant in the last mentioned suit, was a relative of J. J. Nidever, but the degree of relationship does not appear. At the time of the institution of the said suit against him he was in possession, using and cultivating, as the tenant of the said J. F. Sinclair, some portion of the said 264 acre tract. He was not claiming the land as the owner thereof nor was he holding the same adversely to the said J. F. Sinclair or those who then claimed the land, or through whom the defendants in this suit deraign and claim title. J. F. Sinclair, at the time John Nidever was sued, claimed some part of, or some interest in, the J. J. Nidever survey and subsequently all of said survey was conveyed to him and A. Sinclair, and the balance of the 264 acres was patented to him as before stated. Neither J. F. Sinclair, A. Sinclair nor any other person claiming to be the owner of said 264 acre tract was made a party to the said suit of Lamar County v. John Nidever or notified to appear and defend the same. It was agreed by the plaintiff and defendants thereto that the suit of Lamar County v. John Nidever should not be tried, but should abide the result of the trial of the said suit of said county against Verner et al. The Verner case was tried at the August, 1879, term of the District Court and resulted in a verdict and judgment for the defendants. This judgment, on appeal to the Supreme Court, was affirmed. During the pendency of said appeal the John Nidever case was continued, as appears by orders entered upon the docket of the court, from term to term, to await the action of the Supreme Court in the Verner case. When the mandate of the Supreme Court showing the affirmance of the judgment in the Verner case was filed in the District Court the John Nidever case, in accordance with the agreement mentioned, was dismissed. In 1883 the appellant, through its Commissioners Court,

authorized and empowered John C. Oates "to locate, have surveyed and patented to the county of Lamar on any of the public domain of the State of Texas, any and all of the unlocated balance of any certificate or certificates as may have been located upon land which now lies within the territorial limits of the county of Delta and the State and relocate the same, subject to the control of said Commissioners Court." On November 23, 1883, a patent was issued and delivered to John C. Oates for Lamar County, for 21,238,745 square varas of school land in Hopkins County, and on December 5, 1895, 2684 acres of school land in Lamar County was patented to Lamar County. On March 7, 1896, Lamar County duly empowered its then county judge, J. C. Hunt, to abandon and release all claims to school lands in Delta County and to obtain from the General Land Office certificates for the unlocated balance of Lamar County's school lands. The evidence is insufficient to show that Oates, ever lifted or released the survey and location made for Lamar County of the 264 acres of school land situated in Delta County, and which is in controversy in this suit. Nor is it sufficient to show that its county judge, J. C. Hunt, ever did anything whatever towards abandoning said survey and location. On the contrary, it appears by the certificate of the Commissioner of the General Land Office, which was introduced in evidence, that on April 27, 1896, a certificate was issued by the Commissioner of the General Land Office to Lamar County for 2,907,802 square varas of land, being the unlocated balance of school land due the county, which was located in Bailey County; that this certificate of unlocated balance did not include the J. J. Nidever and J. F. Sinclair surveys in Delta County, but that said surveys were included in the estimate of school land that had been surveyed for Lamar County and as such was charged against said county and deducted with other lands from the amount of the balance for which said certificate was issued, and is now charged against said Lamar County."

The first, second, third and fourth assignments of error complain of the introduction of certain evidence, as follows: (1) A certified copy of a decree of the District Court of Lamar County, dated April 16, 1841, and styled County of Lamar v. Republic of Texas, No. 26, which, in effect, was a finding that plaintiff was entitled to an order for the survey of four leagues of land; (2) certified copies from the General Land Office and from Lamar, Hopkins and Delta Counties of the field notes of a survey of about 264 acres of land, made for Lamar County November 16, 1854, and (3) a certificate from the Commissioner of the General Land Office, the contents of which will be set out in this opinion.

The objections urged to the introduction of the judgment and field notes was that they were immaterial and irrelevant. The objection is without merit. Both the judgment and field notes were properly admitted in evidence by the court. The judgment was the record of a proceeding authorized by law at the time of its entry, and was a preliminary and inducing circumstance tending to show the regularity of plaintiff's procedure in acquiring the location and survey of the land granted it by the Constitution and several legislative

Acts. Also were the field notes a link in the chain connecting the grant of the four leagues of land with their segregation and appropriation by plaintiff.

To the introduction in evidence by the plaintiff of the certificates of the Commissioner of the General Land Office, defendants objected to the following portion of one of said certificates as set forth in their bill of exceptions No. 3: "I, John J. Terrell, Commissioner of the General Land Office of the State of Texas, do hereby certify, that where field notes have been made in one county and subsequently the survey would be in another county by a subsequent creation of another county, it has been the custom of this department to cross the name of the original county and insert in lieu thereof the name of the subsequent county; and it has also been the custom for this department where field notes did not show the position of the county in which the survey was located to insert the course and distance from the county site. I further certify that it has at times been the custom in the drafting department for the draftsmen to change an erroneous course in a field note to proper course and for this office to then notify the proper county surveyor of such change and ask him to make the correction on his records; but that has not been a uniform custom and I certify that it is not now permitted. I further certify that the red ink interlineation in the field notes of Lamar County school survey of 264 acres surveyed on the 16th of March, 1854, and recorded in Book A, pages 273-4, on the 16th of March, 1860, appear to have been made subsequent to the filing of those field notes in this office. I certify that the foregoing facts are shown by the maps, papers, records and documents of said office and as is known from my experience in the work of said office."

The foregoing certificate was introduced in evidence under authority of article 2253, Revised Statutes, and was objected to on the ground that the facts sought to be established by this certificate were not such facts as were shown by the papers, documents or records of the General Land Office and failed to come within the purpose of the statute.

Article 2253, Revised Statutes, upon which the admissibility of the certificate in evidence was predicated is as follows:

"It shall be the duty of . . . Commissioner of the General Land Office . . . to furnish any person who may apply for the same, with a copy of any paper, document or record in his office, and also to give certificates, attested by the seal of this office, certifying to any fact or facts contained in the papers, documents or records of his office, to any person applying for the same, and the same shall be received in evidence in all cases in which the original would be evidence."

It is contended by counsel for defendants that the certificate of the Commissioner of the General Land Office is not competent to prove any fact except the correctness of a copy of some instrument or document in his office, and not to prove and "fact or facts contained in the papers, documents or record in his office." Such contention is not tenable, for it is obvious from a reading of the statute that its purpose is twofold, first, to require the commissioner to

certify to the correctness of all papers, documents and records upon proper demand of any person, and, second, to certify to any fact or facts contained in the papers, documents or records of the Land Office when requested so to do.

We are of opinion, however, that the objection urged to the certificate under consideration was well taken. A portion of the facts stated in the certificate was such facts as were within the knowledge of the commissioner, gleaned from some other source than the records of the office, and the other fact relating to the point of priority in time the red ink marks were made as compared with the original record of the field notes was clearly his conclusion from an examination of the record and not the statement of a fact contained in the record and therefore not such fact as may be certified by the Land Commissioner as contained in the papers, documents and records of his office. Smithers v. Lowrance, 100 Texas, 77.

The other facts certified to by the Land Commissioner being such as were contained in the records of his office were properly admitted in evidence. While we think the certificate of the commissioner, in so far as it embraced facts within his knowledge and not contained in the records of his office, and in so far as it embraced his conclusions drawn from an examination of the records, was improperly admitted in evidence, we do not find that defendants were in any manner injured by the admission in evidence of such facts. The cause was decided by the trial court in their favor, and, as we view the case, none of such facts here held to have been improperly certifid by the commissioner and admitted in evidence are necessary to be considered in disposing of this case and may be wholly eliminated.

We do not think we are called upon to pass upon the question of res adjudicata, as we do not think that question is in the case in view of the facts found by the Court of Civil Appeals and fully sustained by the record. While the evidence might be sufficient to show that there was an agreement between counsel representing the plaintiff, Lamar County, in the two suits mentioned in defendants' plea of res adjudicata and estoppel that the Nidever case involving the land in controversy in this suit should be continued to await the decision in the Verner case, involving like questions of law involved in the Nidever case, and that the Nidever case should abide the result of the Verner case, yet the evidence fails to show that this agreement was ever perfected and judgment entered thereupon. Three years elapsed between the time when the agreement was supposed to have been made and the final disposition of the Verner case, and after the lapse of such time the record discloses that the Nidever case was dismissed for want of prosecution. We think this fact clearly shows that whatever the original agreement was about the matter it was subsequently changed or was not approved by the court, and instead of entering up a judgment in conformity to the agreement as originally entered into, a dismissal was had in compliance with some other arrangement. There was no final judgment disposing of the issues involved in the suit between Lamar County and J. J. Nidever. Before defendants could avail themselves of the plea of res adjudicata it would be incumbent on them to show that a judg-

ment had been entered by a court of competent jurisdiction disposing of the rights of the parties at interest. If a judgment had been entered in pursuance to the agreement set up by defendants awarding the land in controversy to the defendants in the Nidever case it is probable that it would be a bar to plaintiff's right to recover in this case, provided defendants properly connected themselves with such judgment. In the absence of any final judgment we therefore conclude that the trial court erred in holding that Lamar County is precluded from recovering the land sued for in this case by reason of the alleged agreement set out in defendants' answer.

The most important question presented for settlement is that in regard to the superior rights of the parties to this suit accruing to them from the several legislative grants and provisions of the law regulating the location and return of the field notes of such grants and the issuance of patents thereon. The right of Lamar County to the acquisition of four leagues of land for the benefit of its public schools, of which the land in controversy is a part, was given by the Act of January 26, 1839, and January 16, 1850, articles 3464 and 3468, Paschal Digest, the first Act granting three leagues of land and the second one league additional. This grant of land to the several counties was in response to the general provisions, section 5, of the Constitution of the Republic, and subsequently recognized and confirmed by the Constitution of 1845, section 4, article 10. The two Acts granting the four leagues of land to the several counties for school purposes contemplated the location and survey of such land to be made by the several counties and provided that where there was not sufficient quantity of good vacant land in the county making the location, such county was empowered and required to have located and surveyed its quantum of land under said Acts upon any of the vacant and unappropriated land within the limits of the State. The Acts provided that when the survey of this land was made a description of the land with the field notes of the survey should be returned by the surveyor to the clerk of the County Court, who was required to record same and forward a transcript thereof to the General Land Office. In cases where the land was not situated in the county making the location, the transcript of the field notes was required to be recorded in such county in the county clerk's office. No time was provided in either of these Acts for the return and record of the field notes of the surveys and no penalty or forfeiture prescribed for the failure to return and have the same recorded.

The record discloses that on March 16, 1854, Lamar County located and had surveyed the land in controversy which was situated in Hopkins County as then organized and a description and field notes of the survey was returned and recorded on the 13th day of February, 1855, in the office of the surveyor of Hopkins County and a transcript of such field notes and the record thereof was filed and recorded in the county clerk's office of Lamar County on March 15, 1860, and on March 29, 1860, was filed in the General Land Office.

The claim of defendants is based upon two preemption locations and surveys, one by J. J. Nidever, on February 17, 1857, for 160

acres, and one by J. F. Sinclair, December 17, 1889, for 115 acres. The patent to the 160 acres was issued to J. J. Nidever on July 1, 1873, and for the 115 acres to J. F. Sinclair November 9, 1895, and held by defendants by the mesne conveyances or otherwise from the patentees.

It is contended that inasmuch as plaintiff failed to comply strictly with the provisions of the Act of 1839, article 3466, Pasch. Dig., providing for the return by the surveyor of the field notes of the survey of 264 acres to the county clerk of the county in which the land was situated, and by the clerk recorded, and a transcript thereof forwarded to the General Land Office within twelve months after the survey, the claim of defendants under the facts herein stated is superior to that of plaintiff. Great stress is placed upon the Act of February 10, 1852, article 4562, section 2, Pasch. Dig., which provided for the return of all field notes of locations of land to the General Land Office within twelve months from the date of the survey, and prescribing the penalty of forfeiture for failure to comply with such requirements. If the Act of February 10, 1852, was intended to embrace surveys of locations to be made by counties of this State for the benefit of their public schools, then such contention would be correct, subject to the qualifications hereafter made. We do not think, however, the Legislature intended that the Act of February 10, 1852, should apply to the locations of school land by the several counties by virtue of the Acts of 1839 and 1850. Those two Acts prescribe the method of procedure by the counties in making locations and surveys of the public school lands granted each of them by the government. The grant of the four leagues of land to each county in this State was a special grant for a specific purpose, and the provisions relating to the manner and method of making the locations were unique and were intended to relate to no other locations and surveys. We think the Congress of the Republic and the Legislature of the State of Texas designed this regulation solely for the government of the counties in accepting the grants of this land, and that it was designed that no other Acts relating to the record and return of field notes should have any bearing upon the location of the county school lands.

In this connection it is worthy of note that the provisions relating to the location and field notes of the surveys of lands by the counties differ from the provisions and requirements of all other locations and surveys of land in this State. The surveyor is required to return the field notes to the county clerk, a provision not required in any other surveys; the field notes thus returned are required to be recorded by the clerk and a transcript of same forwarded by him to the General Land Office, another provision not required in any other surveys. In addition to the foregoing the Acts require that where the land is located in another county than the one locating it, a transcript of the field notes and record thereof shall be filed with the county clerk of the locating county and there recorded, a provision that is not required in any other location. Considering the peculiarity of these provisions and their special relevancy to the location of county school land it is safe to say that it is clear the legislative purpose and

intent was not solely to give notice of such location, neither to impose a greater burden upon the counties in making the locations than upon others. It seems to us a reasonable inference that these provisions thus peculiar and applicable only to the locations of the county school lands were the result of the deep solicitude of the legislative authorities to insure the grant of this land to the several counties of this State and to establish firmly the evidence of such location and guard against the mutations likely to be wrought by fire or other destructive agencies of public records. The preservation of the evidence of title in the counties to these grants was the controlling purpose of the law makers in framing the provisions of said Acts. In further support of this view is the fact that on August 29, 1856, the Legislature passed laws providing that no statute of limitation should ever operate to give title to any land granted for educational purposes. So that it is our opinion the requirements relating to the location and survey of the county school land are within themselves complete and that the other Acts relied upon by counsel for defendants have no relevancy to these locations.

Should we be in error in this view and the sole purpose of the Act of January 26, 1839, was to give notice, then we answer that in the case of Lamar County such requirement was met, for all other Acts required the field notes to be returned and be recorded in the surveyor's office of the county where the land was located. This was done by Lamar County by having the field notes recorded in the surveyor's office of Hopkins County and all persons had notice of such location and survey. It was impossible for either of the preemptionists in this case to have secured the services of a surveyor as long as the land was situated in Hopkins County without knowing that the land in controversy had been located and surveyed by Lamar County in 1854. As applicable to the Sinclair preemption the survey of which was made after the organization of Delta County where the land is now situated, he had notice, for the record discloses the fact that on September 8, 1877, a transcript of the field notes was recorded in that county which was prior to his location and survey.

In holding that the Act of February 10, 1852, did not relate to or affect the location and survey of the county school land, we are not treading upon new ground, for in a number of cases our Supreme Court has held the same view.

In the case of Milam County v. Robertson, 33 Texas, 366, the facts show that Milam County had one league of land located and surveyed in Johnson County in December, 1849, but failed ever to have the field notes recorded in Johnson County and did not have them recorded in Milam County until 1858, three years after Robertson and others had settled upon said land. In the Milam County case we have presented a much stronger case against that county than against Lamar County in this case. In construing the Act of February 10, 1852, which was invoked in that case as in the case at bar the court in part say: "We think that if the Act of February, 1852, applied at all to surveys of school land (which had been granted by public Acts of the Legislature), the State only could have taken advantage of the laches of the appellant and it was not for third

parties to take advantage of her neglect. The county of Lamar was and is a trustee, holding these lands for the use of the people, and it would not only be contrary to law, but much against public policy to allow the interests of the whole community to be prejudiced by the negligence of the trustees when the parties seeking the advantage are chargeable with notice of the trust."

In the case of Fannin County v. Riddle, 51 Texas, 360, the facts were that Fannin County located and had surveyed a tract of land in Cook County, but the field notes were never returned to the county clerk of either Cook or Fannin County and recorded as required by law, nor was a transcript of the field notes ever filed in the General Land Office. In the meantime preemptionists settled upon the lands and out of conflicting claims the suit grew. In deciding the case Judge Bonner referring to the Act of January 26, 1839, granting the school land and to the Act of February 10, 1852, requiring the return of field notes said: "The Act does not specify any time within which the surveys shall be returned to the clerk of the County Court, or that they shall be forfeited unless so returned. We are of opinion that the failure of the surveyor to make such return should not prejudice the rights of the county to the land which had been surveyed for the benefit of public schools. We are also of opinion that the Act of February 10, 1852, Pasch. Dig., art. 4562, requiring field notes of all surveys made previously to the passage of the Act to be returned to the General Land Office on or before the 31st of August, 1853, or they should become null and void does not apply to surveys made for the benefit of public schools. It has been the policy of Texas, both as a Republic and as a State, to encourage education by a liberal donation from her magnificent public domain and to preserve and give direction to the same by judicious legislation. By the above Act of January 26, 1839, fifty leagues of land were set apart as a university fund and each county was entitled to have three leagues surveyed for benefit of a general system of education. This by subsequent legislation was increased to four leagues. So guarded was the State to protect these lands and to place them on a different tenure from those held by individuals that by the Act of August 30, 1856, it was provided that no statute of limitation should run in favor of anyone who had theretofore settled or might thereafter settle upon the same. This salutary provision was subsequently incorporated into the organic law of the State. These lands were intended for the wise purpose of public education, which, by the Constitution of 1876 is declared to be essential to the preservation of the liberties and rights of the people. The counties are the mere trustees to carry out this purpose and the lands are given to them not to divest the body politic of their control or benefit, but for the purpose of convenience of designation and distribution. This is evident from the jealous protection and direction which the people have exercised over them in their several organic and legislative enactments."

In further support of our holding we quote the following excerpts from the opinion in the case of Milam County v. Bateman, 54 Texas, 153: "It is also contended by defendant that the right of Milam County to this land is forfeited by the delay to have the field notes

recorded in the office of the county clerk and the failure to have them returned to the General Land Office by the 31st day of August, 1853.

"That the mere failure of the county to comply with the provisions of these statutes as to record and return of field notes would not defeat the title to their school land was decided by this court in the former suit in which this question was raised upon this very title. . . .

"If Milam County had appropriated the land by a valid location and survey which, as to the return of the field notes, did not come within the provisions of the Act of February 10, 1852, article 4562, Pasch. Dig., then a subsequent locator must at his peril take notice of the rights of the county."

Construing the Acts of January 26, 1839, and January 16, 1850, granting the four leagues of land to each county in Texas as a legislative grant and complete within themselves and that locations and surveys under said Acts are not affected or controlled by the Act of February 10, 1852, we are of opinion that plaintiff substantially complied with the laws governing such locations and surveys. And whether it did or not, a failure to comply with such provisions of said Acts did not work a forfeiture of its right or impair its title to said land.

Another ground upon which the trial court based its decision was that Lamar County had abandoned its claim to the land sued for. This ruling was predicated upon the fact that on September 17, 1883, Lamar County acting through its County Commissioners Court authorized and empowered John C. Oates to lift the certificate located on the 264 acres of land in Delta County in controversy in this case and locate other lands for the county in lieu thereof. It is conceded the Commissioners Court of Lamar County was authorized to abandon the location of the land in controversy; but only in case a like amount was located in a different place. But it was shown that Lamar County is charged in the General Land Office with the land in controversy and that without this land it has not received its quantum of acres. It seems to be pretty well settled in this State that where the government makes an appropriation of land for some particular use and a tract of such land is in conformity with such appropriation separated from the mass of the public lands by a survey or other appropriate acts of segregation, the title to such land becomes a vested right, which may not be impaired or lost by abandonment unless other lands are secured in its stead. That is to say, the mere declaration, intention or determination to abandon the location and survey thus made would not be effective as to the right of a county to its school land, unless the county had received an equal amount in lieu of that abandoned. Milam County v. Blake, 54 Texas, 169; Snyder v. Methvin, 60 Texas, 487; Milam County v. Bateman, 54 Texas, 163; Hamilton v. Avery, 20 Texas, 635.

The law provides that the county school lands can only be sold or disposed of by the Commissioners Court and an order of such court authorizing the lifting of the certificate from the land in suit without locating and having surveyed another tract of equal area in its stead

would be a void order and of no effect. We do not think the facts of this case justify the theory of abandonment of the land sued for by plaintiff. The location and survey of the land by plaintiff in 1854 vested in it the title to said land, which could by no authority of the Commissioners Court be disposed of except by the prescribed method provided for by law.

There remains to be disposed of the question of the suggestion of improvements in good faith for the value of which defendants sue. They properly presented their plea of improvements in good faith, but upon special exceptions urged by plaintiff their said plea was stricken out by the trial court.

We think the court did not err in sustaining plaintiff's special exceptions to defendants' plea of improvements in good faith. If the controversy was about land that formed no part of the county school land the ruling of the trial court complained of would have been clearly wrong, and under the facts and circumstances of this case, as hereinbefore detailed, no question could be raised as to the right of defendants to recover judgment for the value of their improvements. But when the claim for improvements is made upon county school lands we are met face to face with a long established public policy, which guards with a jealous care these lands dedicated to the peoples' education, and which has thrown around them for protection the shield of the Constitution. It matters not how strongly we may be inclined to give relief to those who in good faith have spent their labor and effects upon the lands of another, yet we must heed the mandates of the law's intent.

On August 30, 1856, the Legislature enacted the following law, General Laws, Sixth Legislature, page 85: "No statute of limitation shall run in favor of anyone who has heretofore, or may hereafter settle upon or occupy any of the lands that have heretofore been granted or may hereafter be granted by the State for purposes of education."

This legislative provision was followed by the constitutional provision of 1876, article 7, section 6, which was amended and declared adopted September 25, 1883, and is a part of our present Constitution, which reads as follows:

"Section 6. All lands heretofore or hereafter granted to the several counties of this State for educational purposes, are of right the property of said counties respectively to which they were granted, and title thereto is vested in said counties and no adverse possession or limitation shall ever be available against the title of any county. Each county may sell or dispose of its lands in whole or in part in manner to be provided by the Commissioners Court of the county. Actual settlers residing on said land shall be protected in the prior right of purchasing the same to the extent of their settlement not to exceed 160 acres at the price fixed by said court, which price shall not include the value of existing improvements made thereon by such settlers."

The statutory provision, article 5277, Revised Statutes, giving the claimant the right to recover for improvements made in good faith by him requires that he shall allege and prove, among other things,

"that he and those under whom he claims have had adverse possession in good faith of the premises in controversy for at least one year next before the commencement of such suit," and it follows as a necessary sequence that in order to establish such claim for such improvements made in good faith the question of both adverse possession and of limitation are involved. If these questions are involved in the right to recover the value of such improvements, then the establishment of such rights contravene the letter and spirit of the Constitution. This becomes more apparent in view of the further statutory provision, article 5181, Revised Statutes, that where the plaintiff prevails in his suit and a recovery is had by defendant for improvements, no writ of possession shall be issued for the term of one year after the date of the judgment, unless the plaintiff shall sooner pay the amount of the judgment for such improvements with interest. The judgment authorized by the statute is not personal and may not be enforced except as it prevents the writ of possession, and ultimately upon failure of plaintiff to pay the judgment forces the sale of the land at a price fixed by the District Court. This directly annuls that part of the Constitution above set out, which provides that such lands in whole or in part shall be sold or disposed of in manner to be provided by the Commissioners Court of the county owning the land, and as well that provision of the Constitution which declares that the price of such land shall be fixed by said Commissioners Courts. We have no authority to substitute the District Court for the Commissioners Court to sell or dispose of the school lands belonging to Lamar County, or to fix the price at which such land shall be sold, which would be the effect of holding that the value of improvements, made in good faith upon county school lands, may be recovered.

It is our opinion and we hold that the value of such improvements upon such land is not recoverable. It follows, therefore, that the judgment of the Court of Civil Appeals, reversing the judgment of the District Court of Delta County and rendering judgment for the plaintiff below, should be affirmed, and it is so ordered.

*Affirmed.*