## FREESTONE COUNTY v. McKINNEY et al. (No. 2647.)

(Court of Civil Appeals of Texas. Amarillo. April 14, 1926. Rehearing Denied May 26, 1926.)

**1. Public lands ⟨⟩173(14)—Purchaser of school land from county held to have title, subject to lien to secure purchase-money note.**

Grantee who received school land from county by authority of commissioners' court had title thereto, subject only to lien retained by county to secure payment of purchase-money note.

**2. Trespass to try title ⟨⟩35(2)—In trespass to try title, defendant could, under plea of not guilty, prove any fact except limitation that would defeat plaintiff's right to recover.**

In trespass to try title, where neither party pleaded title specially nor alleged independent equities, defendant was authorized, under plea of not guilty, to prove any fact except limitation that would defeat plaintiff's right to recover.

**3. Appeal and error ⟨⟩1050(1)—In trespass to try title to county school lands against one claiming under county's grantee, admission of copies of treasurer's report, giving status of school fund when grantee's note was due, held not reversible error, though they were not certified to by county clerk (Acts 1888, c. 7 [9 Gammel's Laws, p. 1004]; Vernon's Sayles' Ann. Civ. St. 1914, art. 3694).**

In trespass to try title to school lands by county against one claiming from county's grantee, admission of certified copies of county treasurer's reports, giving status of school fund at time grantee's purchase-money note was due, which copies had been accepted as compliance with law but which were not certified to by county clerk as required by Acts 1888, c. 7 (9 Gammel's Laws, p. 1004), *held* not reversible error, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 3694.

**4. Public lands ⟨⟩173(14).**

Evidence, including certified copies of county treasurer's reports giving status of school fund, *held* insufficient to show payment of purchase-money note for school lands.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Payment ☞66(5).**

Presumption of payment arising from lapse of time is rule of evidence and subject to rebuttal.

**6. Limitation of actions ☞166.**

Statute of limitations makes lapse of time an absolute legal bar to recovery of a claim.

**7. Payment ☞66(2).**

Debt due and unclaimed for more than 20 years, unless delay is justified by some existing condition, is generally presumed to have been paid, independently of any statutory period of limitation.

**8. Payment ☞66(5).**

Presumption of payment arising from long lapse of time is conclusive unless rebutted.

**9. Counties ☞216—County is subject to same rules of evidence and legal presumptions that control private individuals, except as to limitations and adverse possession, and laches cannot be imputed to it because of its officer's negligence.**

County is subject to same rules of evidence and legal presumptions that control in suits between private individuals, except that it enjoys immunity from limitation and adverse possession, and laches cannot be imputed to it because of its officer's negligence.

**10. Equity ☞75—Payment ☞66(5).**

Ignorance of rights or of fraud perpetrated, existence of trust relation, infancy, mental unsoundness, and coverture will relieve private individuals from laches and from presumption of payment arising from lapse of time.

**11. Public lands ☞173(14)—County seeking to recover school land held not bound by presumption of payment of purchase-money note (Const. art. 7, § 6).**

County, in suit to recover school land or proceeds thereof, held not bound by presumption of payment arising from long lapse of time, in view of Const. art. 7, § 6, where there was no record of grantee's payment of purchase-money note.

**12. Evidence ☞83(4)—Where there was no record of payment of purchase-money note given county and payable 35 years before suit was brought, presumption that officers did duty and collected debt does not obtain.**

Where there was no record of payment of purchase-money note given county and payable 35 years before suit was brought, it cannot be presumed that officers did duty and collected debt, since it was also their duty to record collection.

**13. Public lands ☞178(2)—One claiming school land under county's grantee giving purchase-money note held not innocent purchaser, where there was no record of payment.**

One claiming land given to county for school purposes under county's grantee, who gave purchase-money note, held not innocent purchaser, where there was no record that note was paid.

Appeal from District Court, Clay County; Vincent Stine, Judge.

Suit in trespass to try title by Freestone County against C. E. McKinney and others, in which the named defendant was granted a severance. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

T. H. Bonner, of Fairfield, W. W. Ballew, of Corsicana, Geo. W. Fryer (of Bonner, Bonner & Fryer), of Wichita Falls, Wantland & Glasgow, of Henrietta, and J. S. Dickey, of Wichita Falls, for appellant.

Thompson, Knight, Baker & Harris, of Dallas, Weldon & McDonald, of Wichita Falls, and Benson & Benson and Chancellor & Bryan, all of Bowie, for appellees.

JACKSON, J. This is a suit in trespass to try title instituted by Freestone county, the appellant, in the district court of Clay county against several hundred defendants to recover four leagues of land.

C. E. McKinney, one of the defendants, and appellee here, was granted a severance by the court, and answered disclaiming as to all the lands in controversy save and except 40 acres described in his answer, and pleaded not guilty, and valuable improvements in good faith. The case was tried before the court without the intervention of a jury, and judgment rendered denying appellant a recovery of said 40 acres of land, and discharging appellee with his costs.

The appellant rested after introducing in evidence the patent from the state of Texas, dated January 19, 1855, and recorded in the deed records of Clay county, granting to it for school purposes the four leagues of land described in its petition.

The appellee introduced in evidence a certified copy of a plat approved by and recorded by order of the commissioners' court of appellant county, subdividing said four leagues of land into blocks, which were numbered, and upon said plat is block No. 63; an order of said court fixing the price per acre and the terms and conditions upon which the blocks were to be sold to purchasers, which authorized O. C. Kirven, county judge of appellant county, to negotiate the sale of the county's lands and make, execute, and deliver to purchasers proper deeds thereto for the consideration and upon the terms and conditions provided in said order; a deed dated January 13, 1879, from O. C. Kirven, county judge, as attorney in fact of Freestone county, conveying block 63 to J. H. Wakefield in accordance with said order for a consideration of $70.87 cash paid, the receipt of which was acknowledged, and a note for $707.63, executed by the grantee in said deed and payable to Freestone county on January 13, 1889, with interest at the rate of 10 per cent. per annum from date, payable annually; an order of said court dated February 15, 1879, acknowledging the receipt by the county of the cash consideration recited

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in the deed, and approving the report of the sale of this and other lands.

Appellee then introduced a connected chain of title from J. H. Wakefield down to himself covering the 40 acres of land involved in this appeal. He introduced in evidence from the office of the state superintendent of public instruction a certified copy of a report of the permanent school fund of said county, made by the treasurer thereof to the commissioners' court, by whom the report was approved, and which was filed in the office of the state superintendent. This report states it is for the scholastic year beginning July 1, 1888. He offered a similar report by the county treasurer of Freestone county, made to and approved by the commissioners' court, of the permanent school fund for the scholastic year, beginning, it states. September 1, 1889, and ending August 9, 1890, and was on file with the state superintendent of public instruction.

The findings of fact filed by the trial court, in so far as they are necessary to a consideration of this appeal, are, in effect, that the state of Texas patented four leagues of land for school purposes to Freestone county; that the commissioners' court of said county approved a plat subdividing said four leagues into blocks, which were numbered, one of which was block No. 63; that by proper order of said court, O. C. Kirven, the county judge of the county, was authorized to sell and convey for it block No. 63 for $2.25 per acre upon the terms set forth in the order; that block 63 was sold and conveyed by O. C. Kirven, as attorney in fact for the county, by virtue of said order and in accordance with the terms and conditions thereof, to J. H. Wakefield by deed dated January 13, 1879, for a consideration of $70.87 in cash, and the execution and delivery of the promissory note of the grantee for the sum of $707.63, of even date with said deed, bearing interest at the rate of 10 per cent. per annum, payable annually, and due January 13, 1889; that a lien was retained in the deed to secure the payment of said note according to the face and tenor thereof; and that appellant county received and accepted the consideration for said land recited in the deed; that the 40 acres of land involved in this appeal was a part of block 63, and that the appellee has title thereto by reason of a connected chain of title from J. H. Wakefield to himself; that the vendor's lien note given by J. H. Wakefield, payable to Freestone county, as a part of the consideration for block 63, had been paid in full to the county; that appellee and his predecessors in title have made valuable improvements upon said 40 acres of land of the reasonable cash market value of $1,900; and that the value of said 40 acres was enhanced by the improvements placed thereon in the sum of $1,900.

The trial court concluded as a matter of law that the deed from Freestone county to J. H. Wakefield constituted a valid sale of block No. 63, subject to the vendor's lien contained in the deed to secure the purchase-money note in the principal sum of $707.63, due January 13, 1889; that Freestone county ratified the sale by the receipt and acceptance of the purchase price; that the defendant C. E. McKinney is the owner of said 40 acres of land; that the vendor's lien retained by Freestone county in the sale of block 63 to J. H. Wakefield has been paid, satisfied, and discharged; and that appellant should be denied a recovery of said land.

Appellant contends that inasmuch as the suit is one in trespass to try title, with no facts alleged entitling appellee to equitable relief, he having answered only by plea of not guilty and valuable improvements in good faith, thus admitting possession, that the patent from the state to Freestone county was prima facie proof of its legal title, and the court committed error in denying it a recovery because appellee failed to show any title to the land, either legal or equitable.

[1] Under this record the title to the land involved passed to J. H. Wakefield, appellee's remote predecessor in title (King County v. Martin [Tex. Civ. App.] 173 S. W. 960; Gallup v. Liberty County, 57 Tex. Civ. App. 175, 122 S. W. 291; Carter-Kelly Lumber Co. v. Angelina County, 59 Tex. Civ. App. 310, 126 S. W. 293; Matagorda County v. Casey, 49 Tex. Civ. App. 35, 108 S. W. 476; Leon County v. Vann, 86 Tex. 707, 27 S. W. 258), subject only to the lien retained by the county to secure the payment of the purchase money evidenced by note (Rooney v. Porch [Tex. Com. App.] 239 S. W. 910, and authorities cited).

[2] Neither party pleaded title specially, nor alleged independent equities; hence, under the plea of not guilty, appellee was authorized to prove any fact, except limitation, that would defeat appellant's right to recover. Wittbecker v. Walters, 69 Tex. 470, 6 S. W. 788; Kauffman v. Brown, 83 Tex. 41, 18 S. W. 425; McKamey v. Thorpe, 61 Tex. 648; Key v. Jones (Tex. Civ. App.) 191 S. W. 736; Birge-Forbes Co. v. Wolcott (Tex. Civ. App.) 176 S. W. 605; Parker v. Schrimsher (Tex. Civ. App.) 172 S. W. 165; Pierce v. Texas Rice Development Co., 52 Tex. Civ. App. 205, 114 S. W. 857.

[3] Appellant presents, as error, the action of the trial court in admitting in evidence, over its objection, certified copies of the annual reports made by the county treasurer of Freestone county to the state superintendent of public instruction, giving the status of the permanent county school fund of appellant county for the years beginning July 1, 1888, and September 1, 1889, respectively. The objections are that the purported reports are not properly certified; do not describe the land; could not affect the school fund; not the best evidence; not binding on the county; and were immaterial.

(285 S.W.)

Chapter 7 of the Acts of 1888 (Gammel's Laws of Texas, vol. 9, p. 1004), made it the duty of the county treasurer of the county to report to his commissioners' court the disbursement of the school fund, state and county, and, after such report had been examined and approved by the commissioners' court, to immediately transmit a copy of such report, "including a statement of the status of the permanent county school fund, certified to by the county clerk, to the superintendent of public instruction at Austin."

The copies of these reports offered in evidence were certified by the county treasurer and approved by the commissioners' court of Freestone county, but do not appear to have been certified to by the county clerk before being transmitted to the superintendent's office; however, it appears that these reports were forwarded to and were filed with the state superintendent and accepted as a compliance with the law, and therefore became archives of his office. Under article 3694, V. S. C. S., and the conditions revealed by this record, it is our opinion that there was no reversible error in admitting them in evidence. Magee et al. v. Paul et al., 110 Tex. 470, 221 S. W. 254; State v. Sais et al., 60 Tex. 87; Stone Land & Cattle Co. v. Boon, 73 Tex. 548, 11 S. W. 544; Zettlemeyer v. Shuler, 52 Tex. Civ. App. 648, 115 S. W. 78; Lewis et al. v. Harrison et al. (Tex. Civ. App.) 229 S. W. 691.

[4] However, these reports are entitled to little, if any, consideration in determining whether or not the note involved in this controversy had been paid. The first report shows that the permanent school fund belonging to appellant county consisted of 480 acres of unsold land, $500 invested in United States bonds, $4,000 in county bonds, $22,902.56 represented by "purchase notes," or a total of $29,432.96, in addition to the 480 acres of unsold land. The second report shows that the 480 acres of unsold land had been disposed of between the time of making the first report and the making of the second report; that it had on hand $500 invested in Texas bonds, $4,000 in county bonds, no "purchase notes," and $18,327.59 in cash—a total of $22,827.59. Whether the 480 acres of unsold land was disposed of for cash or credit, or what became of the proceeds thereof, is not revealed. No information is given as to what was done with the United States bonds, or how the Texas bonds were acquired; no facts disclosed as to why the permanent school fund of the county in the first report was $29,432.96 in addition to the 480 acres of unsold land, and only $22,827.59 without any land at the time the second report was made the following year. These reports are so meager, so incomplete, and so full of discrepancies that, without some explanation from additional records or otherwise, they are not sufficient to show the payment of the note involved in this controversy.

The appellant challenges, as error, the action of the trial court in denying it a recovery, asserting that the transaction by which J. H. Wakefield, appellee's predecessor in title, acquired the land, constituted at most but an executory contract of sale, the superior title remaining in the vendor county, and, inasmuch as limitation did not run against the county for its school land or for the proceeds thereof, and no laches can be imputed to it, the finding of the court that the note had been paid and the lien discharged is without evidence to support it.

[5, 6] Appellee, in reply to this proposition, contends that the presumption of payment raised by the lapse of time is a rule of evidence operating independently of any statute of limitation, and applies to the payment of the purchase-money note taken by the county and the lien given to secure its payment, and, together with the other evidence, is conclusive against appellant, because this presumption of payment arising from the lapse of time was not rebutted by any testimony.

"The statute of limitations is to be distinguished from what is known as presumption of payment arising from lapse of time. This presumption is an artificial and arbitrary rule of the law derived by analogy from the English statute of limitations. It originated in equity, but was afterwards incorporated into the common law. It is a mere rule of evidence, and is subject to rebuttal, whereas the statute of limitations makes the lapse of time a positive and absolute legal bar." 37 C. J. 685.

"A sharp distinction must be drawn between the length of time which operates as a bar to a claim and that which is only used by way of evidence of payment. The former is conclusive, the latter presumptive. The former says the statute of limitations provides that this action may not be maintained after a certain number of years and, therefore, the plaintiff must fail; the latter says this is a stale claim, it is 20 years old, and before the plaintiff can succeed, he must rebut the presumption of payment which the law raises." Jones' Commentaries on Evidence, vol. 1, par. 66.

For additional authorities, see 16 Eng. Ruling Cases, p. 311, American notes.

The Supreme Court of the United States, speaking of statutes of limitation, says:

"They do not confer any right of action. They are enacted to restrict the period within which the right, otherwise unlimited, might be asserted. They are founded upon the general experience of mankind, that claims which are valid are not usually allowed to remain neglected. The lapse of years without any attempt to enforce a demand creates, therefore, a presumption against its original validity, or that it has ceased to subsist. This presumption is made by these statutes a positive bar; and they thus become statutes of repose, protecting parties from the prosecution of stale claims, when, by loss of evidence from death of some witnesses, and the imperfect recollection of others, or the destruction of documents, it might be impossible to establish the truth. The policy of these statutes is

to encourage promptitude in the prosecution of remedies." Riddlesbarger v. Hartford Ins. Co., 7 Wall. 386, 19 L. Ed. 257.

[7, 8] The close and inseparable relation of the equitable principles based on laches and stale demand, the doctrine of presumption of payment from the lapse of time, and the statute of limitations, how and to whom applied, must be kept in mind in determining the sufficiency of the evidence in this case. The long lapse of time is a circumstance from which payment may be inferred, and a debt that has been due and unclaimed for a period of more than 20 years, unless the delay is justified by some existing condition, is, between citizens generally, presumed in law to have been paid independently of, or without any, statutory period of limitation, and, unless the presumption is rebutted by testimony, it is conclusive. Greenleaf on Evidence (13th Ed.) vol. 1, par. 39; 30 Cyc. 1275; Jones' Commentaries on Evidence, vol. 1, § 65; Weems v. Masterson, 80 Tex. 45, 15 S. W. 590; Mills v. Alexander, 21 Tex. 154; Mensing v. Fidelity Lumber Co. (Tex. Civ. App.) 194 S. W. 208; Milwee v. Phelps, 53 Tex. Civ. App. 195, 115 S. W. 891; Buckley v. Runge, 57 Tex. Civ. App. 322, 122 S. W. 597; Fulshear v. Deadman et al. (Tex. Civ. App.) 154 S. W. 616.

[9] The appellant is subject to the same rules of evidence and legal presumptions as control in suits between private individuals (Leake v. City of Dallas [Tex. Civ. App.] 197 S. W. 472; In re Ash's Estate, 202 Pa. 422, 51 A. 1030, 90 Am. St. Rep. 658; Elliott Williamson, 11 Lea [Tenn.] 38), except as the effect of such presumptions is limited by the well-settled rule which prevents the imputation of laches to the government on account of the negligence of its officers and agents, and except as the effect of such presumptions is modified by the Constitution and law of this state, under which appellant, relative to the subject-matter of this suit, enjoys immunity from limitation and adverse possession.

"As a general principle, laches is not imputable to the government. This doctrine is one of public policy and is based on the assumption that the officers of the government may be so busily engaged in the ordinary affairs of state as to neglect a vindication of its interest in the others." 10 R. C. L. p. 401.

"While the contrary has sometimes been held, yet, by the weight of authority, the defense of laches is not available against the government, state or national, in a suit by it to enforce a public right or to protect a public interest, or, as the rule is sometimes expressed, the laches of its officers or agents will not be imputed to the government." 24 C. J. p. 217.

"The doctrine that laches is not imputable to the government was a controlling reason for the rule that limitation did not apply to the state, unless it was included. The considerations of wise public policy which were supposed to uphold this doctrine rested upon the theory that the head of the government was engrossed with the cares and duties of state, and that the public should not therefore suffer by reason of the negligence of its servants. Discussing this question, the Supreme Court of the United States use this language: 'In a representative government, where the people do not and cannot act in a body, where their power is delegated to others, and must of necessity be exercised by them, if exercised at all, the reasons for applying these principles is equally cogent.' U. S. v. Thompson, 98 U. S. 489 [25 L. Ed. 194]. The principles referred to were embodied in the maxim to the effect that no time runs against the government. It is upon this principle, applicable alike to all governments necessarily acting through numerous agents, and essential to the preservation of the interests and property of the public, that the statute of a state prescribing periods of time within which rights must be asserted are held not to embrace the state itself unless expressly designated." Brown v. Sneed et al., 77 Tex. 471, 14 S. W. 248.

[10] There are many conditions which relieve against laches: Ignorance of rights; ignorance of a fraud perpetrated; the relation of trustee and cestui que trust, so long as the relation exists; infancy; mental unsoundness; coverture; and many others. Pom. Eq. Jur. (4th Ed.) vol. 4, p. 1447 et seq.; Hill et al. v. Moore, 85 Tex. 335, 19 S. W. 162.

[11] Notwithstanding these well-founded and long-established principles, the people of Texas, in order to safeguard the lands donated by the state to the counties for educational purposes from injudicious disposition, and to protect the proceeds of the sales thereof from unwise investment, and prevent any right thereto from maturing by limitation or adverse possession, and to create and maintain a permanent school fund, adopted article 7, § 6, of the Constitution of the state, which reads:

"All lands heretofore or hereafter granted to the several counties of this state for educational purposes, are of right the property of said counties respectively, to which they were granted, and title thereto is vested in said counties; and no adverse possession or limitation shall ever be available against the title of any county. Each county may sell or dispose of its lands, in whole or in part, in manner to be provided by the commissioners' court of the county. Actual settlers, residing on said lands, shall be protected in the prior right of purchasing the same to the extent of their settlement, not to exceed one hundred and sixty acres, at the price fixed by said court, which price shall not include the value of existing improvements made thereon by such settlers. Said lands and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein; said proceeds to be invested in bonds of the United States, the state of Texas, or counties in said state, or in such other securities and under such restrictions as may be prescribed by law; and the counties shall be responsible for all investments; the interest thereon and other revenue, except the principal, shall be available fund."

If such conditions as enumerated above—mental unsoundness, minority, etc.—excuse private individuals from the charge of laches, one element of which may be stale demand, long lapse of time, then it must follow that the same conditions will relieve such private individuals from the presumption of payment arising from lapse of time; hence, the county, to which no laches can be imputed, in a suit to recover its school land or the proceeds thereof, and, under the constitutional provision, supra, would not be bound by the presumption of payment, at least, to the extent of private individuals who could not justify, by some equitable excuse, and therefore the rights of appellant are to be tested, not alone by the length of time that has elapsed, but its status as a litigant must be considered, and, when this is considered, laches is eliminated, because it is exercising a function of government (Jernigan v. Finley, 90 Tex. 212, 38 S. W. 24), and when laches is eliminated, lapse of time is a circumstance of little, if any, probative force.

[12, 13] Appellant filed its original petition in this case in the district court on October 8, 1923. The note executed by J. H. Wakefield to the county, secured by the lien, was due and payable January 13, 1889. These dates disclose that more than 35 years elapsed after the maturity of the debt before the filing of the suit in trespass to try title. The patent introduced in evidence vested the title in the county. The appellee, to defeat this title, offered in evidence the proceedings of the commissioners' court and the deed from the county to J. H. Wakefield, which deed disclosed the vendor's lien note for the sum of $707.63, secured by the lien retained therein for the payment thereof; and the record fails to disclose any release of such lien. There is no testimony that any record or records have been lost or destroyed, or that the witnesses who could give evidence of these transactions have died or disappeared. Many of the deeds by which appellee connects himself with the title of J. H. Wakefield are quitclaims only. No additional weight is added to the circumstance of long lapse of time by the presumption that the officers to whom the handling of the permanent school fund is intrusted did their duty, for the same law that imposes on them the duty of collecting this debt charges them with the duty of making a record of such collection, and no record of such collection was made. There are no equities in behalf of appellee that would add additional force to the presumption of payment from long lapse of time. The Constitution of the state advised him that the land could not be acquired by adverse possession, nor the payment of the purchase-money note defeated by limitation. The law charged him with notice that laches could not be imputed to

the county. The deed records of the county where the land is situated informed him that no release had been secured evidencing the payment of the note and the discharge of the lien. Under these facts, he could not claim as an innocent purchaser.

Appellee's counter proposition involving the question of improvements in good faith are, in our opinion, settled adversely to his contention by the case of Talley v. Lamar County, 104 Tex. 295, 137 S. W. 1125, and the constitutional provision quoted.

On account of the insufficiency of the testimony, the judgment is reversed and the cause remanded.